UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

D-1 DAVID BRIAN STONE, a.k.a. "RD,"
    a.k.a. "Joe Stonewall," a.k.a. "Captain Hutaree,"
D-2 DAVID BRIAN STONE, JR., a.k.a. "Junior,"
D-3 JOSHUA MATTHEW STONE, a.k.a. "Josh,"
D-4 TINA MAE STONE,
D-5 JOSHUA JOHN CLOUGH, a.k.a "Azzurlin,"
    a.k.a. "Az," a.k.a. "Mouse," a.k.a. "Jason Z. Charles,"
D-6 MICHAEL DAVID MEEKS, a.k.a. "Mikey,"
D-7 THOMAS WILLIAM PIATEK,
D-8 KRISTOPHER T. SICKLES, a.k.a. "Pale Horse,"
D-9 JACOB J. WARD, a.k.a. "Jake," a.k.a. "Nate,"
    a.k.a. "Guhighllo,"

        Defendants.
_____/

CRIMINAL NO. 10-20123

HON. VICTORIA A. ROBERTS

DETENTION HEARING MEMORANDUM

During the detention hearing on April 28, 2009, the Court raised a concern about the government's ability to establish, pursuant to *Brandenburg v. Ohio*, 395 U.S. 444 (1969), that there was an "imminent" harm or act of violence. However, as the facts presented do not reflect "mere advocacy", but rather speech-related conduct which includes the agreement of two or more persons to levy war against the United States, there is no requirement for the United States to establish an "imminent" harm under *Brandenburg*.

1

DISCUSSION

The free speech guarantee of the First Amendment has been interpreted by the U.S. Supreme Court to extend to speech advocating illegal conduct, and regulation of such speech is permissible only in narrow circumstances: "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation, except where such advocacy is directed to inciting or producing imminent lawless actions and is likely to incite or produce that action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). In *Brandenburg*, the Supreme Court struck down Ohio's Criminal Syndicalism Act, which aimed to punish:

> persons who advocate or teach the duty, necessity, or propriety of violence as a means of accomplishing industrial or political reform; or who publish or circulate or display any book or paper containing such advocacy; or who justify the commission of violent acts with intent to exemplify, spread or advocate the propriety of the doctrines of criminal syndicalism; or who voluntarily assemble with a group formed to teach or advocate the doctrines of criminal syndicalism.

*Id*. at 448 (internal quotation marks omitted). The indictment charged that the defendant, a leader at a Ku Klux Klan rally, "did unlawfully by word of mouth advocate or teach the necessity, or propriety of crime, violence, or unlawful methods of terrorism as a means of accomplishing political reform." *Id.* at 449 n.3. In striking down the statute, the Court explained that "we are confronted with a statute which, by its own words and as applied, purports to punish mere advocacy. ... Such a statute falls within the condemnation of the First and Fourteenth Amendments." *Id*. at 449.

A number of U.S. statutes criminalize speech-related conduct, including general laws criminalizing the solicitation to commit acts of violence, conspiracy, and aiding and abetting. More specific laws forbid seditious conspiracy; advocating the overthrow of the government; teaching

arms-making; mailing material that incites murder, assassination, or arson; and providing material support to designated terrorist organizations or in support of terrorist acts.

Specifically, Title 18 United States Code, Section 2384 prohibits seditious conspiracy, that is, conspiring to use force to overthrow or oppose by force the government. The statute simply requires proof that two or more persons conspired in a place subject to United States jurisdiction. In a leading seditious conspiracy case, *United States v. Rahman*, 189 F.3d 88, 116-17 (2nd Cir. 1999) (per curiam), Sheik Rahman, in a speech to his followers, instructed them to "'do jihad with the sword, with the cannon, with the grenades, with the missile ... against God's enemies.'" Id. at 104 (citation omitted). He spoke about jihad at a conference, id. at 107, and issued a fatwah on a plan to bomb the UN. Id. at 109. In *Rahman*, the court rejected the defendant's facial and as-applied First Amendment challenges to the statute. *Rahman*, 189 F.3d at 116-17. The court considered evidence that the defendant said to a co-conspirator that he "'should make up with God ... by turning his rifle's barrel to President Mubarak's chest, and kill[ing] him,'" that he urged another conspirator to "'[c]arry out this operation .... Go ahead,'" and that he assured another that "'it's a duty'" to bomb the UN headquarters. Id. at 117 (quoting transcript). The court concluded that these were words "that instruct, solicit, or persuade others to commit crimes of violence," and were therefore not "immunize[d]" by the First Amendment from prosecution. *Id*. at 117. *Brandenburg* restrictions did not apply because the crime charged was conspiring to "use" force, not to "advocate" the use of force. *Id*. at 115.

To prove a violation of 18 U.S.C. § 2384, the government must prove the following elements:

    1.    The defendant knowingly conspired with one or more persons to do one or more of

3

the following—

    a.    overthrow, put down, or destroy by force the United States Government;

    b.    levy war against the United States;

    c.    oppose by force the authority of the United States Government;

    d.    prevent, hinder, or delay by force the execution of any U.S. law; or

    e.    seize, take, or possess by force any U.S. property contrary to the authority of the United States Government.

    2.    The conspirators conspired in a place subject to the jurisdiction of the United States. There is no requirement (i.e. an element) that the United States establish that there was an "imminent" harm. Rather, that it must simply show an agreement to oppose by force the authority of the United States.

As stated in Count one of the Indictment, the defendants conspired to "levy war against the United States, to oppose by force the authority of the Government of the United States, and to prevent, hinder and delay by force the execution of any United States law." The central purpose and discussion of the Hutaree and their leader, David Stone Sr., centered on the concept of operations that the Hutaree would commit some violent act to draw the attention of law enforcement or government officials and which would prompt a response by law enforcement. Acts discussed included killing a member of law enforcement after a traffic stop, killing a member of law enforcement and his family at home, ambushing a member of law enforcement in rural communities, luring a member of law enforcement with a false 911 emergency call and then killing him or her, and killing a member of law enforcement and then attacking the funeral procession motorcade with Weapons of Mass Destruction. The Hutaree were trained and instructed that once such action was

taken, they would retreat to one of several "rally points" where the Hutaree would wage war against the government and be prepared to defend with trip-wired and command detonated anti-personnel IEDs, ambushes and prepared fighting positions.  The Hutaree believe that this engagement would then serve as a catalyst for a more wide-spread uprising against the Government.  The facts presented do not reflect "mere advocacy", but rather speech-related conduct which includes the agreement of two or more persons to levy war against the United States. Further, even though 18 U.S.C. § 2384 does not require overt acts, numerous overt acts in furtherance of this agreement have been pled and have been presented to the court during the various detention hearings.

   Moreover, given the gravity of the planned future operations (i.e., killing a member of law enforcement then attacking the funeral procession with IED/EFP), the prosecution of the defendants for conspiracy is appropriate in order to prevent the conspiracy from ripening into actual violent actions.  "Congress enacted Section 2384 to help the government cope with and fend off urban terrorism. . . .  Section 2384 provides a vehicle for the government to make arrests before a conspiracy ripens into a violent situation.  The government's interest in thwarting such plans and in safeguarding public security is unquestioned."  *United States v. Rodriguez*, 803 F.2d 318, 320 (7th Cir. 1986).

CONCLUSION

Based upon the charges pled in the indictment and the forgoing information provided to the Court, there is no requirement for the United States to establish an "imminent" harm under *Brandenburg*.

        Respectfully submitted,

        BARBARA L. MCQUADE
        United States Attorney

        s/Ronald W. Waterstreet
        RONALD W. WATERSTREET
        Assistant United States Attorney

        s/Joseph L. Falvey
        JOSEPH L. FALVEY
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan  48226-3220
        Phone: 313-226-9610
        Email: Joseph.Falvey@usdoj.gov

Dated:  April 29, 2010

CERTIFICATE OF SERVICE

      I hereby certify that on April 29, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> William W. Swor, Esq.
> Richard M. Helfrick, Esq.
> James C. Thomas, Esq.
> Michael A. Rataj, Esq.
> Randall C. Roberts, Esq.
> Mark A. Satawa, Esq.
> Henry M. Scharg, Esq.
> Christopher M . Seikaly, Esq.
> Arthur Weiss, Esq.

> s/Ronald W. Waterstreet
> Assistant United States Attorney
> 211 West Fort Street, Suite 2001
> Detroit, Michigan  48226-3220
> Phone: 313-226-9593
> Email: Ronald.Waterstreet@usdoj.gov