UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

        Plaintiff,

                            Case No. 10-20123

v.                            Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

        Respondent.

_____/

### Motion *In Limine* Requesting Application of The *Strictissimi Juris* Standard To Protect the Accused's Rights to Freedom of Association, Assembly, and Due Process

Defendant, **DAVID STONE, JR.**, by his attorneys, **RICHARD M. HELFRICK** and **TODD A. SHANKER** of the Federal Defender Office moves this Honorable Court to apply the doctrine of *strictissimi juris*, i.e. the strictest standard, and to instruct the jury accordingly prior to the government's case-in-chief and again prior to jury deliberations. Defendant files a supporting Brief and states:

1.     Defendant was arrested on March 27, 2010, in connection with an Indictment charging him (and eight others) with Seditious Conspiracy, Conspiracy To Use Weapons of Mass Destruction and other charges.

2.     He has been free on bond since May 18, 2010.

3.      On February 10, 2011, a Second Superseding Indictment charged David Stone, Jr. with Seditious Conspiracy, Conspiracy to Use Weapons of Mass Destruction, Teaching and Demonstrating Use of Explosives, two counts of Carrying a Firearm During and In Relation To a Crime of Violence, two counts of Possessing a Firearm in Furtherance of a Crime of Violence, and Possession of an Unregistered Firearm.  The eight other defendants were similarly charged.

4.      To serve "the ends of justice," the government dismissed the charge of possession of an unregistered firearm against Stone, Jr. on September 27, 2011.

5.      The alleged duration of the charged conspiracies is from August of 2008 to March of 2010.

6.      The Supreme Court has held that "criminal disabilities may not be imposed on one who joins an organization which has among its purposes the violent overthrow of the Government, unless the individual joins knowing of the organization's illegal purposes and with the specific intention to further those purposes."  *NAACP v. Clairborne Hardware*, 458 U.S. 886, 932 (1982).

7.      "The *strictissimi juris* doctrine emphasizes the need for care in analyzing the evidence against a particular defendant in a case [involving a bifarious organization], both by the jury in its fact-finding process and by the court in determining whether the evidence is capable of convincing beyond a reasonable doubt."  *United States v. Dellinger*, 472 F.2d 340, 393 (7th Cir.1972).

2

8.     Application of the *strictissimi juris* standard is of the utmost importance in criminal cases involving members of an organization that has "both legal and illegal aims," with its legal aims including freedom of speech and/or advocacy. *Scales v. United States*, 367 U.S. 203, 229 (1961);  *United States v. Dellinger*, 472 F.2d 340, 393 (7th Cir.1972); *United States v. Larson*, _ F.Supp.2d _, 2011 WL 3501732, *19 (W.D.N.Y. 2011)(holding that although the doctrine cannot be used to dismiss an indictment, "the *strictissimi juris* standard of review for **sufficiency of the evidence** applies where an organization is shown to engage in both legal and illegal conduct, and where the organization's conduct is within the shadow of the First Amendment.").  Emphasis added.

9.     In these special cases, the evidence of the defendant's intent must be limited to: (1) his own prior or subsequent unambiguous statements; (2) his own subsequent commission of the illegal acts contemplated by the conspiracy; or (3) his own subsequent legal act if that act "is clearly undertaken for the specific purpose of rendering effective" the illegal aims of the conspiracy. *United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969).

10.     The *strictissimi juris* standard must apply in this case because the Hutaree militia is a "bifarious" organization – i.e. a group with "both legal and [allegedly] illegal aims." *Scales v. United States*, 367 U.S. 203, 229 (1961).  These aims were, at a minimum, in the "shadow of the First Amendment."  *United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969).

11.     For instance, regardless of the charges in the Indictment, there is no dispute that the aims of the Hutaree militia included the free exercise of their First and Second Amendment rights, including freedom of speech, association, assembly, and the right to bear arms.

12.     The Hutaree advertised on the internet for new members and maintained a website and Facebook page that was open to the public.  These Hutaree websites openly announced each upcoming training, and included a variety of discussion forums that were open to the public. Furthermore, the Second Superseding Indictment contains the fact that the Hutaree engaged in advocacy.  R. 293, Second Superseding Indictment, ¶6. The government has conceded in open court that it did not arrest approximately 75% of the militia. R. 157, Bond Rev. Hrg., Vol. 1, p. 22, 4/27/2010 (Government tells Court: "[A]ctually there is approximately 25 more, yes, Your Honor.").   The government has conceded further, in open court, that: "[T]raining is not a crime, even military-style training."  R. 87, Dtn. Hrg., p. 25-26, 4/1/2010.  The government has also stated in open court that this case is "not about a religious group and it's not about the militia... it's about a group of like-minded individuals who [allegedly] decided to oppose by force the authority of the United States[.]"  R. 85, Dtn. Hrg., p. 7-8, 3/31/2010.

13.     As such, the Hutaree militia is a "bifarious" organization – i.e. a group with "both legal and [allegedly] illegal aims." *Scales v. United States*, 367 U.S. 203, 229 (1961).  These aims were, at a minimum, in the "shadow of the First Amendment."

*United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969).

14.     The government's evidence in this case will attempt to use the out-of-court statements and actions of other defendants/Hutaree/family members as evidence of Stone, Jr.'s intent to join the charged criminal conspiracies, thereby violating his First Amendment right to the freedom of association and his Fifth Amendment right to due process.  To prevent this violation of fundamental constitutional rights, the *strictissimi juris* standard must be applied.

15.     Counsel has contacted the government regarding this Motion.  The government does not concur.

WHEREFORE, Defendant moves this Honorable Court to apply the *strictissimi juris* standard and instruct the jury accordingly prior to the government's case-in-chief and again prior to jury deliberations.

Respectfully Submitted,

Legal Aid & Defender Association
**FEDERAL DEFENDER OFFICE**


s/Richard Helfrick
E-Mail: Richard_Helfrick@fd.org

s/Todd A. Shanker
E-Mail: Todd_Shanker@fd.org
Counsel for David Stone, Jr.
613 Abbott St, 5th Floor
Detroit, MI 48226
Dated: January 5, 2012          (313) 967-5542

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

          Plaintiff,

                                Case No. 10-20123
v.                              Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

          Respondent.

_____/

**Brief in Support of
Motion *In Limine* Requesting Application of
The *Strictissimi Juris* Standard
To Protect the Accused's
<u>Rights to Freedom of Association, Assembly, and Due Process</u>**

## <u>TABLE OF AUTHORITIES</u>

**<u>Supreme Court</u>**

*Bridges v Wixon*, 326 U.S. 135 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982). . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 8

*Noto v. United States*, 367 U.S. 290 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 11

*Scales v. United States*, 367 U.S. 203 (1961). . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 9, 11

*Schneiderman v. United States*, 320 U.S. 118 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yates v. United States*, 354 U.S. 298 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zafiro v. United States*, 506 U.S. 534 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**<u>Circuit Courts</u>**

*Hellman v. United States*, 298 F.2d 810 (9th Cir. 1961). . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Dabish,* 708 F.2d 240 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Dellinger*, 472 F.2d 340 (7th Cir.1972). . . . . . . . . . . . . . . . . . 3, 4, 5, 9, 16

*United States v. Fullmer*, 584 F.3d 132 (3rd Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Spock*, 416 F.2d 165 (1st Cir. 1969). . . . . . . . . . . . . . . . . . 5, 9, 11, 12, 14

**<u>District Courts</u>**

*United States v. Larson*, __ F.Supp.2d __,
    2011 WL 3501732 (W.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## State Courts

*Castro v. Superior Court*, 9 Cal. App. 3d 675 (Cal. App. 2d Dist. 1970). . . . . . . . . . . . . 12

## Constitutional Authority

U.S. Const., Amend. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 8, 9

U.S. Const, Amend II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

U.S. Const., Amend V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8

## Federal Rules

Fed. R. Crim. Pro. 30(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Crim. Pro. 57(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Law Review Articles

Rachel K. Cush and Jane Goodman Delahunty, *The Influence of Limiting Instructions on Processing and Judgements of Emotionally Evocative Evidence*, 13 Psychol. Pub. Pol'y & L. 110 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Thomas Church, *Conspiracy Doctrine and Speech Offenses*,
    60 Cornell L. Rev. 569 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Vicki L. Smith, *Impact of Pretrial Instruction on Jurors Information Processing and Decision-Making*, 76 J. Applied Psychol. 220 (1991). . . . . . . . . . . . . . . 13

## STATEMENT OF CONTROLLING AUTHORITY

*NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982), *Scales v. United States*, 367 U.S. 203 (1961), and *Noto v. United States*, 367 U.S. 290 (1961) provide the controlling authority for the issue raised in this Motion.

## STATEMENT OF ISSUE PRESENTED

Given that the government has conceded in open court that the Hutaree had both legal and [allegedly] illegal aims,  including the exercise of First and Second Amendment rights, whether the court should apply the *strictissimi juris* standard at trial in order to protect the defendant's First Amendment right to freedom of assembly and association, and his Fifth Amendment right to due process; and whether the court should effectuate application of this standard by instructing the jury prior to the government's case-in-chief and again prior to jury deliberations?

# I.

## **Statement of Facts**

The government will be presenting in its case-in-chief a variety of audio and video recordings that contain controversial and inflammatory out-of-court statements made by some of the co-defendants in this case over the 20-month period of the government's investigation of the Hutaree militia.  The Hutaree advertised on the internet for new members and maintained a website and Facebook page that was open to the public. These Hutaree websites openly announced each upcoming training, and included a variety of discussion forums that were open to the public. The Second Superseding Indictment includes the fact that the group engaged in protected advocacy along with their allegedly illegal objectives.  R. 293, Second Superseding Indictment, ¶6.   The government has conceded in open court that it did not arrest approximately 75% of the militia.See R. 157, Bond Rev. Hrg., Vol. 1, p. 22, 4/27/2010 (Government tells Court:  "[A]ctually there is approximately 25 more, yes, Your Honor.").   The government has also stated in open court that this case is "not about a religious group and it's not about the militia... it's about a group of like-minded individuals who [allegedly] decided to oppose by force the authority of the United States[.]"  R. 85, Dtn. Hrg., p. 7-8, 3/31/2010.  The government has conceded further, in open court, that: "[T]raining is not a crime, even military-style training."  R. 87, Dtn. Hrg., p. 25-26, 4/1/2010.

The government alleges that the nine defendants joined a seditious conspiracy "on

2

or about" August 16, 2008 and the conspiracy to obtain a WMD in June of 2009, and remained conspirators up to their arrests. Stone, Jr. was 18 years-old on the date the conspiracy allegedly began. On September 22, 2009, his fiancee Brittany Bryant gave birth to their son Elijah. In October 2009, the three of them moved into the home of Brittany's father, Kevin Bryant, Sr. Stone, Jr. and his family lived with Brittany's father until March 2010, when they obtained their own apartment in Adrian, Michigan. Shortly thereafter, Stone, Jr. was arrested in this case. Stone, Jr. does not make any anti-government or anti-law enforcement statements on any of the hundred-plus hours of recordings.

## II.

## Law And Argument

The doctrine of *strictissimi juris* requires "specially meticulous inquiry" into the government's evidence so that there is "not an unfair imputation of the intent or acts of some participants to all others," which would violate the First and Fifth Amendments. *NAACP v. Clairborne Hardware*, 458 U.S. 886, 920 (1982). Application of the *strictissimi juris* standard is of the utmost importance in criminal cases involving members of an organization that has "both legal and illegal aims," with its legal aims including freedom of speech and/or advocacy. *Scales v. United States*, 367 U.S. 203, 229 (1961); *United States v. Dellinger*, 472 F.2d 340, 393 (7th Cir.1972); *United States v. Larson*, __ F.Supp.2d __, 2011 WL 3501732, *19 (W.D.N.Y. 2011)(holding that

3

although the doctrine cannot be used to dismiss an indictment, "the *strictissimi juris* standard of review for **sufficiency of the evidence** applies where an organization is shown to engage in both legal and illegal conduct, and where the organization's conduct is within the shadow of the First Amendment.").  Emphasis added.

When the government wields the Damoclean sword of a conspiracy charge in proximity to the rights guaranteed by the First Amendment, the government must produce "clear proof that a defendant 'specifically intends' to accomplish the aims of the organization by resort to violence."  *Scales*, *Id*. citing *Noto v. United States*, 367 U.S. 290, 299 (1961).  "The *strictissimi juris* doctrine emphasizes the need for care in analyzing the evidence against a particular defendant in a case of this type, both by the jury in its fact-finding process and by the court in determining whether the evidence is capable of convincing beyond a reasonable doubt."  *Dellinger*, 472 F.2d at 393.

For instance, the Third Circuit recently applied the *strictissimi juris* standard where the defendants, members of an organization opposed to "animal cruelty,"  were charged with "conspiracy to commit interstate stalking," "conspiracy to use a telecommunications device to abuse, threaten, and harass," and "conspiracy to violate the Animal Enterprise Protection Act (AEPA)."  *United States v. Fullmer*, 584 F.3d 132, 160 (3rd Cir. 2009)(The evidence of conspiracy must be judged "according to the strictest law," i.e., the "*strictissimi juris* doctrine") *citing Claiborne Hardware*, 458 U.S. at 920.  In *Dellinger*, the standard was applied where the defendants were charged with "conspiracy" to "not

4

only... incite, organize, promote and encourage a riot, but also to commit acts of violence in furtherance of a riot, and to aid and abet persons in such activities, as well as to" teach "the use of incendiary devices with knowledge that they will be used in a civil disorder." *Dellinger*, 472 F.2d at 349.  And in *Spock*, the strictest standard was applied where the defendant was charged with "conspiracy to counsel, aid and abet" draft evasion (and not merely the "advocacy" of such evasion).  *United States v. Spock*, 416 F.2d 165, 168 (1st Cir. 1969).

Application of the *strictissimi juris* standard prevents the government from using anything other than the defendant's personal statements and/or actions to prove his criminal intent; the government cannot demonstrate guilt through the statements or actions of any co-defendants. *Spock*, 416 F.2d at 173. "The metastatic rules of ordinary conspiracy" do not apply.  *Spock*, 416 F.2d at 173.

If a defendant's words and actions are "as explainable on the theory that [he] sought to effectuate only the [organization's] legal objectives as on the premise that he personally intended violent overthrow of the government," there is insufficient evidence as a matter of law to convict.  *Dellinger*, 472 F.2d at 393, citing *Hellman v. United States*, 298 F.2d 810, 814 (9th Cir. 1961).  Trial courts have an obligation to apply the standard of *strictissimi juris* and carefully enforce its protections. *Dellinger*, 472 F.2d at 393.

A.    The doctrine of *strictissimi juris* applies because the defendants were members of a bifarious organization that, at a minimum, operated in the "shadow of the First Amendment."

When a defendant is charged as part of a bifarious organization, the defendant's specific intent "must be judged *strictissimi juris*," or "according to the strictest law" to avoid punishment for mere assembly or association with the legal activities of an organization. *Noto*, 367 U.S. at 299-300. A bifarious organization is one that "embrace[s] both legal and [allegedly] illegal aims." *Scales*, 367 U.S. at 229. In this case, David, Jr. has associated with two allegedly bifarious groups: his family and the Hutaree. Courts have held that when a bifarious group is involved in unlawful goals, a person is only guilty if the individual held a specific intent to further the group's illegal aims. *See, e.g.*, *Clairborne Hardware Co.*, 458 U.S. at 920.

Furthermore, the evidence overwhelmingly indicates that the Hutaree, at a minimum, included among their aims the exercise of First and Second Amendment rights. The Hutaree advertised on the internet for new members and maintained a website and Facebook page that was open to the public.  These Hutaree websites openly announced each upcoming training, and included a variety of discussion forums that were open to the public. To be sure, the government has all but admitted that the Hutaree is a bifarious organization. The Second Superseding Indictment contains the fact that the Hutaree engaged in advocacy.  R. 293, Second Superseding Indictment, ¶6. The government has conceded in open court that it did not arrest approximately 75% of the militia. R. 157,

6

Bond Rev. Hrg., Vol. 1, p. 22, 4/27/2010 (Government tells Court: "[A]ctually there is approximately 25 more, yes, Your Honor.").   Those who were not arrested were allowed to retain their liberty precisely because the government viewed their participation in the Hutaree as legal.

The government has also stated in open court that this case is "not about a religious group and it's not about the militia... it's about a group of like-minded individuals who [allegedly] decided to oppose by force the authority of the United States[.]"  R. 85, Dtn. Hrg., p. 7-8, 3/31/2010.  The government has conceded further, in open court, that: "[T]raining is not a crime, even military-style training."  R. 87, Dtn. Hrg., p. 25-26, 4/1/2010.  The government's allegation that all of the defendants are "like-minded" magnifies both the dangers involved in this case and the necessity of the *strictissimi juri*s standard.

Hutaree members exercised their constitutional rights to express controversial political views, to assemble peacefully, and to own firearms. *See generally District of Columbia v. Heller*, 128 S.Ct. 2783 (2008); *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). The militia's goals also included preparation for situations involving domestic chaos and/or a possible future attack on the United States by invading forces, and on methods of survival under such circumstances.  Even in this pursuit, their activity involved the legal stockpiling of food, weapons, and ammunition. Although the government alleges that some Hutaree members had a plan to attack police officers, most

7

members were only supportive of, and involved in, the group's legal activities and had no knowledge of an illegal plan, much less agreement with such a scheme.

David, Jr. never even uttered anti-government or anti-police statements, much less agreed to kill a police officer and attack a funeral. Like some other charged and uncharged Hutaree members, there is no evidence that he spoke words or committed acts in support of a violent, criminal plan. *See Claiborne Hardware Co.*, 458 U.S. at 932 ("criminal disabilities may not be imposed on one who joins an organization which has among its purposes the violent overthrow of the Government, unless the individual joins knowing of the organization's illegal purposes and with the specific intention to further those purposes").

In cases implicating the First and Fifth Amendment, the doctrine of *strictissimi juris* embraces the idea that guilt is personal, even when conspiracy charges are brought, and even when co-defendants are family members. This concept is one of the founding values of democratic society. *See Schneiderman v. United States*, 320 U.S. 118, 136 (1943) ("[U]nder our traditions[,] beliefs are personal and not a matter of mere association, and men adhering to a political party or other organization notoriously do not subscribe unqualifiedly to all of its platforms or asserted principles."); *see also Claiborne Hardware Co.*, 458 U.S. at 924 ("Neither guilt by association or guilt of association is permissible under U.S. Const. amend. I."). Recognizing this basic idea of justice, courts have held that statements by co-conspirators are inadmissible to avoid the "unfair

imputation of the intent or acts of some participants to all others." *Dellinger*, 472 F.2d at 393. This ensures that legitimate political expression and association are not chilled, and protects the presumption of innocence. *Scales*, 367 U.S. at 229; *Bridges v Wixon*, 326 U.S. 135, 163 (1945)(stating that the requirement of personal guilt "prevents the persecution of the innocent for the beliefs and actions of others"). In this case, the government's theory of David, Jr.'s guilt appears to be based on his association and assembly with an allegedly bifarious organization and an allegedly bifarious family, which threatens his First Amendment rights as well as those of the citizenry at large. *See Dellinger*, 472 F.2d at 393.

> **B.** **_Spock_ narrows the type of statements that are constitutionally admissible against David, Jr. to show knowledge or criminal intent.**

Under *Spock*, when an organization is bifarious and part of its activity is protected by the First Amendment, there are only three ways that a defendant's criminal intent may be shown. *Spock*, 416 F.2d at 173. In these special cases, the evidence of the defendant's intent must be limited to: (1) his own prior or subsequent unambiguous statements; (2) his own subsequent commission of the illegal acts contemplated by the conspiracy; or (3) his own subsequent legal act if that act "is clearly undertaken for the specific purpose of rendering effective" the illegal aims of the conspiracy. *Id.* What the government may not do in this case is introduce statements by other Hutaree members as proof of David, Jr.'s specific intent. *Id.*

In *Spock*, the court applied these tightened standards to the evidence against each

9

co-defendant. The court held that two of the defendants could be re-tried because their prior statements directly described their intent to achieve the object of the conspiracy charged. *Id*. at 173. Spock was acquitted, however, because he never expressed any seditious intent.

Joshua Clough's recent guilty plea hearing also highlights the need for application of the *strictissimi juris* standard in this case.   Clough  pleaded guilty to a single §924(c) charge: carrying a firearm during and in relation to a crime of violence, namely the conspiracy to use weapons of mass destruction charged in Count 2.  Plea Hearing, 12/5/2011, Tr. 15-16.  However, Clough's factual basis for his plea indicates that the government will seek to brand individual defendants as conspirators based on their mere association with the Hutaree.  Clough stated the following as his factual basis:  "I carried or used a firearm on [2/20/2010], and that was in relation to the weapons of mass destruction.  I provided David Stone with the schematic or a diagram or whatever you want to call it for the explosively formed penetrator."  Plea Hearing, Tr. 15.[1] After giving this diagram to Stone, Sr., Clough claimed that he and others reached "an agreement or an implied agreement" to use this weapon.  *Id*., Tr. 16.  Clough stated that "one could imply" that the weapon "could" be used against vehicles belonging to Federal law enforcement officers, but emphasized that the use of the weapon was based on the fact that "at one point" David Stone, Sr.  "mention[ed]" that "he wanted to take out the local Sheriff's

---

[1]    The discovery materials indicate that Clough would have given the diagram to Stone, Sr. sometime in late January or early February of 2010.

10

APC [Armed Personnel Carrier] with it." *Id.*, Tr. 16-17.  When asked to explain how the training related to the conspiracy, Clough stated only that "we had guns and we shot them at a dirt hill." *Id.*, Tr. 16.

Clough's factual basis, like so many of the recorded out-of-court statements made by individual members of the Hutaree, casts the unmistakable specter over this trial that the government will use the words and actions of others as proof of the defendant's alleged intent to join the charged conspiracies and thereby trample the protections guaranteed by the First and Fifth Amendment.

As in *Spock*, the jury's inquiry in this case should be limited to determining whether David, Jr.'s words and/or actions establish his agreement to join the charged conspiracies and his knowing furtherance of the object of the conspiracies.  *Spock*, 415 F.2d at 173l;  *see also*, Thomas Church, *Conspiracy Doctrine and Speech Offenses*, 60 Cornell L. Rev. 569, 589 (1975).  Mere presence, or even knowledge of illegal acts, is insufficient.  *Spock*, 415 F.2d at 174 ("Specific intent is not established by [a] generalization ... the important lesson of *Noto, Scales* and *Yates* (*v. United States*, 354 U.S. 298 (1957)) [is] that one may belong to a group, knowing of its illegal aspects, and still not be found to adhere thereto").  There is a serious risk that the government's evidence in this case will be used at trial, just as in *Spock*, to obtain an unconstitutional conviction unless the protections of *strictissimi juris* are enforced.

11

**C.**     **The court should instruct the jury regarding the *strictissimi juris* standard prior to the government's case-in-chief, and prior to jury deliberations.**

"When many defendants are tried together in a complex case and they have markedly different degrees of culpability, th[e] risk of prejudice is heightened." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  "[A] weak case against one defendant will be strengthened by a mass of evidence relevant only to co-defendants," *Castro v. Superior Court*, 9 Cal. App. 3d 675, 694-95 (Cal. App. 2d Dist. 1970).  When an organization's aims implicate the First Amendment and "encompass both legal and [allegedly] illegal activity," a conspiracy prosecution endangers the rights of defendants who were "merely in sympathy with the legitimate aims" of the group, but "did not intend to accomplish such aims by resort to violence."  *Castro*, 9 Cal. App. 3d at 685 citing *Spock*, 416 F.2d at 173.

As a result, a pretrial limiting instruction before the government introduces evidence that implies guilt by association as well as at the close of the case will help implement application of the *strictissimi juris* standard. A limiting instruction may be given at any time and is entirely within the court's discretion. *See United States v. Dabish,* 708 F.2d 240, 243 (6th Cir. 1983)*, see also* Fed. R. Crim. P. 30(c)("The court may instruct the jury before or after the arguments are completed, or at both times").   Studies have found that jury instructions are more likely to be followed when presented early in the evidence-processing task than when presented late. *See, e.g.,* Rachel K. Cush and Jane

Goodman Delahunty, *The Influence of Limiting Instructions on Processing and Judgements of Emotionally Evocative Evidence*, 13 Psychol. Pub. Pol'y & L. 110, 119-20 (2006).  After listening to a limiting instruction prior to the presentation of evidence, jurors are more likely to defer their verdict until after all the evidence has been presented and integrate facts and law better than when given [solely] a post-trial instruction. Vicki L. Smith, *Impact of Pretrial Instruction on Jurors Information Processing and Decision-Making*, 76 J. Applied Psychol. 220-28 (1991).

A judge's inherent authority to manage a trial generally permits the court to give jury instructions at any time they are needed.  Fed. R. Crim. Pro. 57(b)("A judge may regulate practice [in criminal cases] in any manner consistent with federal law, these rules, and local rules of the district.").  Based on the prevailing scientific literature, a limiting instruction prior to the government's case-in-chief in addition to a conventional, oral and written instruction prior to jury deliberations would be a significant step toward safeguarding application of the *strictissimi juris* standard.

**III.**

**<u>Conclusion</u>**

For all these reasons, David Stone, Jr. respectfully requests that this Honorable Court apply the *strictissimi juris* standard at trial.  Evidence of the defendant's intent must be limited to: (1) his own prior or subsequent unambiguous statements; (2) his own subsequent commission of the illegal acts contemplated by the conspiracy; or (3) his own subsequent legal act if that act "is clearly undertaken for the specific purpose of rendering effective" the illegal aims of the conspiracy.  *United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969).

<div style="margin-left:40%">

Respectfully submitted,

Legal Aid & Defender Association
**FEDERAL DEFENDER OFFICE**

<u>s/ Richard M. Helfrick</u>
E-mail: Richard_Helfrick@fd.org

<u>s/ Todd A. Shanker</u>
E-mail: Todd_Shanker@fd.org
Counsel for David Stone, Jr.
613 Abbott St., 5th Floor
Detroit, MI 48226
(313) 967-5542

</div>

Dated: January 5, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                            Case No. 10-20123
v.                          Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

       Respondent.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2012, I electronically filed the foregoing Motion and Brief with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Sheldon N. Light
Christopher Graveline
Assistant U.S. Attorneys


Respectfully submitted,

Legal Aid & Defender Association
**Federal Defender Office**

s/ Todd A. Shanker
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone:  (313) 967-5542

15