UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                    CASE NUMBER: 10-20123
                                                  HONORABLE VICTORIA A. ROBERTS
v.

DAVID BRIAN STONE, ET. AL.,

                    Defendant.
_____/


## ORDER DENYING DEFENDANTS' MOTION FOR
## DISCLOSURE AND PRODUCTION OF CONFIDENTIAL INFORMANTS


**I.      INTRODUCTION**

        Before the Court is Defendant David Stone, Jr.'s Motion for Disclosure and

Production of Confidential Informants.  (Doc. # 479).  All Defendants join in the motion.

        The Court **DENIES** Defendants' motion for disclosure and **DENIES AS MOOT**

Defendants' motion for impeachment information.

**II.     BACKGROUND**

        Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2)

Conspiracy to use Weapons of Mass Destruction (18 U.S.C. § 2332a(a)(2)); (3) Use

and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. §

924(c)(1)); and (4) Possessing a Firearm in Furtherance of a Crime of Violence (18

U.S.C. § 924(c)(1)).  In addition, Defendants David Stone, David Stone, Jr., and Joshua

Stone are charged with various other weapons-related offenses.

1

Defendants' charges stem from their involvement in an organization known as the Hutaree. The Government alleges the Hutaree is "an anti-government militia organization which advocated and prepared for violence against local, state, and federal law enforcement." (Doc. # 293; Second Superseding Indictment at 2).

At times throughout the investigation of this case, the Government utilized two confidential informants (referred to here as "S1" and "S2"). This motion asks the Court to decide if the Government is required to disclose the identities of its informants prior to trial and produce them to Defendants for pre-trial interviews. The Court also considers whether, in the alternative, it must hold an *in camera* hearing to determine if the Government must disclose the identities of S1 and S2 to the defense. Finally, the Court addresses Defendants' argument that they are entitled to impeachment information regarding S1 and S2.

## III. ANALYSIS

### A. Parties' Arguments

Defendants seek disclosure and production of two confidential informants that the Government planted in the Hutaree militia. Defendants refer to the informants as "Dan Murray" and "S2." They say Murray was active in the Hutaree from August 2008 until about one month prior to the March 2010 arrests. Murray made audio and video recordings of Hutaree trainings over the course of nineteen months; he witnessed and participated in acts the Government alleges are illegal and which led to the arrests and indictments in this case. Defendants contend S2 told law enforcement that "Mark Koernke" was a leader and organizer of the Hutaree and that some members of the

group might be taking steps to conspire against the Government, possibly in violation of 18 U.S.C. § 2385, "Advocating the overthrow of Government."  Defendants believe they are entitled to interview the informants well in advance of trial.  Defendants also request disclosure of impeaching information about the informants.

The Government says it is not required to disclose or produce the first informant, whom it refers to as "S1," because S1 will testify at trial and be subject to cross-examination by Defendants; it says any potential impeachment (*Giglio*) material related to S1 will be provided on a predetermined date and in time for Defendants to adequately prepare for trial.  *See Giglio v. United States*, 405 U.S. 150 (1972).  The Government says it need not disclose S2 because S2 gave the Federal Bureau of Investigation (FBI) only minimal background information before the investigation began, will not testify at trial, and lacks information material to the case.

### B.    Legal Standard

"Ordinarily a defendant is not entitled to a list of the names and addresses of the government's witnesses."  *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) (citing Fed. R. Crim. P. 16).  The same is generally true with respect to people who provide information about criminal activity to law enforcement officers ("informants" or "informers").  In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Supreme Court recognized the Government's privilege to withhold from disclosure the identity of informants.  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that

3

obligation." *Id.* However, in some circumstances, "the privilege must give way;" namely, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," defendants have a right to disclosure. *Id.* at 60-61.

Mere invocation of this right does not automatically outweigh the public interest in protecting confidential informants." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). The *Roviaro* Court refused to set a fixed rule for courts to determine whether to mandate disclosure of government informants. *See id.* at 62. Instead, the Court espoused a case-by-case approach:

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* The burden is on the defendant to show how disclosure of the informant will substantively assist his defense. *Moore*, 954 F.2d at 381.

### C. Defendants are not entitled to disclosure and production of S1; S1 will testify at trial and Defendants will have an opportunity to cross-examine S1.

In *Roviaro*, the case on which Defendants heavily rely, the confidential informant, "John Doe," led four police officers to a spot where he met with the defendant to purchase heroin from him. 353 U.S. at 56-58. One officer hid in the trunk of the car Doe drove; the others followed in two government cars. *Id.* at 56. The defendant entered Doe's car, Doe drove to another location with the government cars trailing, and the defendant gave Doe a package containing heroin. *Id.* at 57-58. At the trial on

4

defendant's drug charges, the court refused to order the government to disclose Doe's identity and Doe did not testify against the defendant; the defendant was convicted of selling heroin to Doe and transporting narcotics.  *See id.* at 58-59, 64.

On review, the Supreme Court held that under the circumstances of the case, the trial court committed prejudicial error by permitting the Government to withhold the identity of its informant.  *Id.* at 65.  The Court emphasized that Doe played a material role in bringing about the drug transaction, was close to the defendant and took part in the transaction; Doe's testimony could have disclosed an entrapment defense or created doubt concerning to the defendant's identity, the identity of the package, or the defendant's knowledge of the contents of the package.  *Id.*  the Court reasoned:

> [T]he Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case.  The only person, other than petitioner himself, who could controvert, e[x]plain or amplify [Officer] Bryson's report of this important conversation was John Doe.  Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.
>
> This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged.  The informer was the only witness in a position to amplify or contradict the testimony of government witnesses.  Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before.  We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure.

*Id.* at 64-65; *see also United States v. Barnett*, 418 F.2d 309, 311 (6th Cir. 1969) (the trial court erred in failing to require the government to disclose its confidential informant where the informant did not testify at the defendant's trial and was present and participated in the allegedly incriminating events).

5

Unlike in *Roviaro*, the Government plans to call S1 to testify against Defendants. Thus, while Defendants will not be able to interview the informant prior to trial, they will hear S1's testimony and can cross-examine S1.  This situation is similar to that in *United States v. Perkins*, 994 F.2d 1184 (6th Cir. 1993), another case involving distribution of narcotics.  There, confidential informant Billie Jean Berry, advised the FBI that one of the defendants approached her about distributing marijuana.  *Id.* at 1186. With Berry's assistance, the defendants were arrested; Defendant Perkins was convicted of marijuana-related offenses.  *Id.* at 1187.

On appeal, Perkins argued that the trial court erred by not compelling the government to disclose Berry's identity in advance of trial.  *Id.* at 1190.  The Sixth Circuit concluded that the trial court did not err.  *Id.* at 1121.  The court observed that Berry testified at Perkins' trial and Perkins cross-examined her extensively and in great detail; it found this distinction from *Roviaro* an important one.  *Id.* at 1190-91.  It said courts in other jurisdictions also consider this distinction important.  *Id.* at 1190 (citing *United States v. Foster*, 815 F.2d 1200, 1202-03 (8th Cir. 1987) (district court did not err in denying the defendant's motion for disclosure of the government's confidential informant, even though the informant was a key witness, where the informant testified at length and was subjected to extensive cross-examination at trial regarding his relationship with the defendant, the circumstances of the defendant's crimes, and the specifics of his role as a government informant) *and United States v. Pennick*, 500 F.2d 184, 186 (10th Cir. 1974) ("In the instant case the informer was a Government witness and did appear and testify upon trial, submitting himself to examination and cross-examination, a fact which we deem to be significant.  In other words, we are not here

6

concerned with an informer who does not appear on trial as a Government witness, and who conceivably could be helpful to the defendant in his defense. So, the informer in the instant case being himself a Government witness, under the general rule cite above Pennick was not entitled to learn the identity of the informer, or any other Government witness, prior to trial.")).

The *Perkins* court noted, the fact that Berry was called as a government witness, ruled out the possibility that her testimony could have been helpful to the defense. *Id.* at 1191. The court observed that there was no indication in the record that the defendant was unfairly surprised or prejudiced by the testimony. *Id.*

There is another important distinction between this case and *Roviaro*. In *Roviaro*, the informant's identity was "highly material" because of the crime charged –facilitating the transportation of heroin– and the possible defense of entrapment. 353 U.S. at 62-64. The *Roviaro* Court emphasized that unless the defendant took the stand, John Doe was his sole material witness; as far as the defendant knew, he and Doe "were alone and unobserved during the crucial occurrence for which he was indicted." *Id.* at 64. The defendant's "opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction." *Id.* at 65.

Defendants do not claim that S1 was the sole participant (with Defendants) in, and only material witness to, the events leading to the indictment. While S1 – as an active participant in events related to the indictment – was more than a mere tipster, there are a number of unindicted Hutaree members who may possibly provide relevant and favorable testimony for the defense. Moreover, while Defendants point out that

7

disclosure may be required particularly in relation to a potential entrapment defense, the

Sixth Circuit has said, "[w]here the defendant claims entrapment, he must adduce some

evidence of entrapment before the government is called upon to disclose to the

defendant the identity of an informant or to disclose whether a potential witness may

have given information to the government (unless it may be subject to *Brady* disclosure

requirements)." *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985).  The

*Sharp* court said "it is ordinarily not even appropriate for the trial court to compel the

production of the suspected informant for an *in camera* interview unless the defendant

has first borne his burden of producing some evidence supportive of his entrapment

defense, and not merely unsworn assertions of his counsel."  *Id.*

Defendants do not provide evidence of an entrapment defense.  Because: (1) S1

will testify for the Government and be subject to cross-examination; (2) S1 is not the

only material witness to the alleged incriminating acts; and (3) Defendants do not

furnish evidence that they were entrapped by S1, the general rule that the Government

need not disclose the identity of any of its witnesses prior to trial will apply with respect

to S1.  *See Perkins*, 994 F.2d at 1190.

**D.    Defendants are not entitled to disclosure and production of S2; they do not meet their burden to show that S2's testimony is relevant and helpful to the defense, or essential to a fair trial.**

The situation with respect to S2 is different than with S1 because the

Government does not plan to call S2 as a witness.  However, this does not

automatically mean Defendants are entitled to call S2. They must still show that the *Roviaro* factors weigh in favor of disclosure. They fail to do so. The only information Defendants provide about S2 is he told Government agents that an unindicted person was a leader of the Hutaree and was possibly working with others to possibly advocate the overthrow of the United States Government in violation of 18 U.S.C. § 2385 – an offense not charged in the Second Superceding Indictment. The Government says S2 did not provide any relevant or helpful information and the information S2 did provide relates to a date preceding the events at issue in the indictment.

In *Moore*, the Sixth Circuit admonished, "[i]f the evidence upon which a defendant is convicted was secured personally by government agents who testified, the government is not required to produce the cooperating individual." 954 F.2d at 381. In *Sharp*, the Sixth Circuit said, "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." 778 F.2 at 1187 (citing *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979)); *see also Moore*, 954 F.2d at 381 ("The district court did not err in refusing to compel disclosure of Jim....[The defendant] advanced no more than a simple statement that Jim's testimony might assist in his defense. Defense counsel's final statement...set out a strategy, not a need, for deciding whether to use the CI as a witness after he was produced."). Instead, the defendant has the burden to show how the informant is relevant and helpful to the defense, or essential to a fair trial. *See Roviaro*, 353 U.S. at 60-61; *Moore*, 954 F.2d at 381.

Defendants offer no more than speculation that interviewing S2 and calling S2 to testify will aid the defense. The Government says that the evidence used to indict

Defendants was gathered without the help of this informant.  *See Moore*, 954 F.2d at 381.  Rather, S2 furnished background information that may have led to the initial decision to investigate Defendants' activities.  In this regard, S2 is akin to a "tipster" who did not play a prominent role in the events leading to the arrests and indictment. *Compare United States v. Jenkins*, 4 F.3d 1338, 1340-42 (6th Cir. 1993) (finding no abuse of discretion in court's decision to refuse to require disclosure of an informant's identity where the defendants were permitted to cross-examine the undercover detective on the only subject the informant could have been of help with and the role of the informant was "extremely limited" because he did not attempt to purchase drugs from the defendants and did not engage in conversation with them) *and United States v. Hanna*, 341 F.2d 906, 907 (6th Cir. 1965) (district court was not required to compel the government to turn over the identity of its confidential informant where the informant merely "acted in bringing the matter to the attention of the Government") *with United States v. Lloyd*, 400 F.2d 414, 416-17 (6th Cir.1968) (reversing the district court's decision not to disclose the identity of an informant and remanding with instructions to conduct an *in camera* hearing to determine whether disclosure was necessary where the informant did not "merely furnished a tip," but set up and participated in the illegal transaction and was a key witness to it).

The Court is aware that in some circumstances it is an abuse of discretion not to hold an *in camera* hearing to determine the relevance and helpfulness of an informant's testimony to the defense.  *See Lloyd*, 400 F.2d at 416 ("The defendant should have been given an opportunity to establish the relevancy of the informer's testimony and whether he was available as a witness.").  In *United States v. Eddings*, the Sixth Circuit

10

said, "[w]hen the evidence suggests...that it is reasonably probable that the informer can give relevant testimony, the burden should be on the government to overcome this inference with evidence that the informer cannot supply the information material to the defense," at an *in camera* hearing.  478 F.2d 67, 71 (6th Cir. 1973).

However, *Lloyd* and *Eddings* are distinguishable.  The evidence in both cases showed that the informant likely played a prominent role in the allegedly unlawful transactions that led directly to the arrests and indictments.  The *Lloyd* court noted that the facts of that case were very similar to those of *Rovario*, *see Lloyd*, 400 F.2d at 415; the *Eddings* court noted that in all likelihood the informant sold the illicit contraband to the defendant, making him a material witness to the transaction that resulted in the arrest and conviction, *see Eddings*, 478 F.2d at 70-71.  But where, as here, the Government's declaration suggests that the informant did little more than provide a tip that initiated an investigation, there is no need to hold an *in camera* hearing to determine the materiality of the informant's identity to the defense.  *See United States v. Hudson*, 325 Fed. Appx. 423, 426 (6th Cir. 2009) (stating that an *in camera* hearing was not required where the informant merely furnished a tip to help police obtain a warrant); *cf. United States v. Lumpkin*, 163 F.3d 608, *1 (9th Cir. 1998) (table) ("Based on the government's declarations, the district court concluded that CI# 1 was a mere tipster and that an in camera hearing would not assist the court in determining if disclosure was warranted.  We agree.").

At this stage, the Court takes the Government at its word as to what the evidence will ultimately show.  As trial unfolds, Defendants may be able to demonstrate their entitlement to disclosure of one or both informants.  Thus, the Court treats Defendants'

11

motion as a motion in limine; its ruling (as it relates to both S1 and S2) – like all rulings on motions in limine – is subject to change.  *See, e.g.*, *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) ("A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court. (Citation omitted) This preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy.... However, the district court may change its ruling at trial for whatever reason it deems appropriate. ").  "The rationale is that facts may come to the district court's attention which it did not anticipate at the time of its initial ruling."  *Id.* If, for example, the Government's evidence suggests that it is reasonably probable that S2 can give relevant testimony, the Court may require disclosure.  Likewise, if the Government changes course and chooses not to call S1 to testify, Defendants may be entitled to learn S1's identity and call S1 themselves.

> **E.    Defendants' request for impeachment material is moot**.

Defendants request impeachment material on S1 and S2 pursuant to *Giglio v. United States*, 405 U.S. 150 (1972).  In light of the Government's representation that potential *Giglio* material regarding S1 will be provided to Defendants shortly, and the Court's determination that Defendants are not entitled to call S2 to testify, Defendants' request is moot.

## IV.    CONCLUSION

The Court **DENIES** Defendants' motion for disclosure and production of S1 and S2 and their request for an *in camera* hearing regarding these informants.

The Court **DENIES AS MOOT** Defendants' *Giglio* request.

**IT IS ORDERED.**

       /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 13, 2012

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
January 13, 2012.

S/Linda Vertriest
Deputy Clerk

13