UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,              CRIMINAL NO. 10-CR-20123

        v.                         HONORABLE VICTORIA A. ROBERTS

DAVID B. STONE, JR., et al.

                  Defendant.

_____/

### DAVID STONE JR.'S MOTION FOR JUDGMENT OF ACQUITTAL

Now comes **DAVID STONE, JR.**, by his attorneys, **RICHARD M. HELFRICK** and **TODD A. SHANKER** of the Federal Defender Office and, pursuant to Rule 29 of the Federal Rules of Criminal Procedure moves this Honorable Court for a judgment of acquittal on all counts. The Defendant files a supporting Brief and further states:

1.      Defendant was arrested on March 27, 2010, in connection with an Indictment charging him (and eight others) with Seditious Conspiracy, Conspiracy To Use Weapons of Mass Destruction and other charges.

2.      He has been free on bond since May 18, 2010.

3.      On February 10, 2011, a Second Superseding Indictment charged David Stone, Jr. with Seditious Conspiracy, Conspiracy to Use Weapons of Mass Destruction, Teaching and Demonstrating Use of Explosives, two counts of Carrying a Firearm During and In Relation To a Crime of Violence, two counts of Possessing a Firearm in Furtherance of a Crime of Violence, and Possession of an Unregistered Firearm. The eight other defendants were similarly charged.

4.      To serve "the ends of justice," the government dismissed the charge of possession of an unregistered firearm against Stone, Jr. on September 27, 2011.

5.     The alleged duration of the charged conspiracies is from August 16, 2008 to March 29, 2010.

6.     The government has failed to prove by a preponderance of the evidence that there was any conspiracy to oppose by force the authority of the United States government or that a rational trier of fact could find the essential elements of the charge beyond a reasonable doubt.

7.     Because the alleged conspiracy to use a weapon of mass destruction is "derivative" of the seditious conspiracy charge, and involves the same alleged plot, the government has also failed to prove Count 2.

8.     The government has also failed to minimally prove that the defendant David Stone, Jr. knowingly and voluntarily joined any alleged conspiracy.

9.     The government does not concur in this Motion.

WHEREFORE, Defendant respectfully moves this Honorable Court to grant his Motion for Judgment of Acquittal.

Respectfully submitted,

Legal Aid & Defender Association
**FEDERAL DEFENDER OFFICE**

s/ Richard M. Helfrick
E-mail: Richard_Helfrick@fd.org

s/ Todd A. Shanker
E-mail: Todd_Shanker@fd.org
Counsel for David Stone, Jr.
613 Abbott St., 5th Floor
(313) 967-5542
Detroit, MI 48226

Dated: March 23, 2012

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                     Plaintiff,              CRIMINAL NO. 10-CR-20123

       v.                            HONORABLE VICTORIA A. ROBERTS

DAVID B. STONE, JR., et al.

                     Defendant.

_____/

**BRIEF IN SUPPORT OF DEFENDANT DAVID STONE, JR.'S
<u>MOTION FOR JUDGMENT OF ACQUITTAL</u>**

## <u>TABLE OF CONTENTS</u>

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Statement of Controlling Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**I.     The Conspiracy Charges In The Indictment Are Co-Dependent On The Single Alleged Plan**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**II.    The Government Failed to Present Any Substantive Evidence That the Defendants Conspired to "Oppose By Force the Authority of the Government of the United States" Utilizing the Plan Charged in the Indictment**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**III.   Mere Presence, Association, Knowledge, Approval or Acquiescence Is Not Sufficient to Convict a Defendant of Conspiracy**. . . . . . . . . . . . . . . . 13

**IV.    The Out-of-Court Statements Made on the Recordings in this Case Are Not Admissible under Fed. R. Evid. 801(d)(2)(E)**. . . . . . . . . . . . . . . . . 18

      **A.     The Government has failed to establish the existence of any conspiracy**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      **B.     There is No Evidence Whatsoever That David, Jr. Agreed to Participate In, Or In Any Fashion Furthered, a Criminal Conspiracy**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      **C.     The Statements Were Not Made In Furtherance of the Conspiracy**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**V.     There Are Very Few, If Any, Out-of-court Statements on the Recordings That Are Admissible as "Verbal Acts"**. . . . . . . . . . . . . . . . . . . 27

**VI.    The Seditious Conspiracy Statute is Being Unconstitutionally Applied to David Stone, Jr. In Violation of the First Amendment**. . . . . . . . . . . . . . . 33

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

## Supreme Court

*Anderson v. United States*, 417 U.S. 211 (1974)(distinguished). . . . . . . . . . . . . . . . . . . . . 30

*Baldwin v. Franks*, 120 U.S. 678 (1852). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10-11

*Bourjaily v. United States*, 483 U.S. 141 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

*Brandenburg v. Ohio*, 395 U.S. 444 (1969).. . . . . . . . . . . . . . . . . . . . . . . . 1, 33, 34, 35

*Chaplinsky v. State of New Hamphsire*, 315 U.S. 568 (1942). . . . . . . . . . . . . . . . . . . . . 28

*Direct Sales Co. v. United States*, 319 U.S. 703 (1943). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dombrowski v. Pfister*, 380 U.S. 479 (1965).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Herndon v. Lowry*, 301 U.S. 242 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

*Ingram v. United States*, 360 U.S. 672 (1959).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kotteakos v. United States*, 328 U.S. 750 (1946).. . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Krulewitch v. United States*, 336 U.S. 440 (1949).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982). . . . . . . . . . . . . . . . . . . . . . . . 1, 14

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Noto v. United States*, 367 U.S. 290 (1961).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Russell v. United States,* 369 U.S. 749 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scales v. United States*, 367 U.S. 203 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Stirone v. United States*, 361 U.S. 212 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Watts v. United States*, 394 U.S. 705 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Whitney v. California*, 274 U.S. 357 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Wong Sun v. United States*, 371 U.S. 471 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Yates v. United States*, 354 U.S. 298 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Circuit Courts**

*Anderson v. United States*, 273 F. 20 (8th Cir. 1921). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Elder-Beermen Stores Corp. v. Federated Dept. Stores, Inc.*,
    459 F.2d 138 (6th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Haywood v. United States*, 268 F. 795 (7th Cir.1920). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). . . . . . . . . . . . . . . . . 28-29

*United States v. Anderson*, 352 F.2d 500 (6th Cir. 1965). . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Bostic*, 480 F.2d 965 (6th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*United States v. Brewer*, 332 Fed. Appx. 296 (6th Cir. 2009)(distinguished). . . . . . . . . 31

*United States v. Brown*, 332 F.3d 363 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Childs*, 539 F.3d 552 (6th Cir. 2008)(distinguished). . . . . . . . . . . . . . 30

*United States v. Collins*, 927 F.2d 605 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Combs*, 369 F.3d 925  (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Conrad*, 507 F.3d 424 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Coppin*, 1 Fed.Appx. 283 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . 15, 16, 31

*United States v. Cornett*, 578 F.3d 776 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . 35

*United States v. DeCologero*, 530 F.3d 36 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Dellinger*, 472 F.2d 340 (7th Cir.1972). . . . . . . . . . . . . . . . . . . . . . 14, 15

iii

*United States v. Diaz*, 597 F.3d 56 (1st Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Elder*, 90 F.3d 1110 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . 1, 18, 30

*United States v. Fullmer*, 584 F.3d 132  (3rd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . 10, 13, 15, 22

*United States v. Glenn*, 828 F.2d 855 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Gomez*, 810 F.2d 947 (10th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hamilton*, 689 F.2d 1262 (6th Cir. 1982)(distinguished). . . . . . . . . 30-31

*United States v. Holloway*, 731 F.2d 378 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*United States v. Kelly*, 864 F.2d 569 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Lee*, 991 F.2d 343 (6th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Lee*, 6 F.2d 1952 (8th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Martinez*, 430 F.3d 317 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Morrison*, 220 Fed.Appx. 389 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . 16

*United States v. Paige*, 470 F.3d 603 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Payne*, 437 F.3d 540 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Phipps*, 595 F.3d 243 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Richardson*, 596 F.2d 157 (6th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Robinson*, 390 F.3d 853 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Rodriguez-Lopez*, 565 F.3d 312 (6th Cir. 2009)(distinguished). . . . . . . . 30

*United States v. Silverman*, 248 F.2d 671 (2nd Cir. 1957). . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Sliwo*, 620 F.3d 630 (6th Cir. 2010). . . . . . . . . . . . 1, 13, 15, 16, 17, 22, 31

*United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Savoires*, 430 F.3d 376 (6th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Von Stoll,* 726 F.2d 584 (9th Cir.1984). . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . 18, 24

*United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Warman*, 578 F.3d 320 (6th Cir. 2009).. . . . . . . . . . . . . . . . . . . 21, 22, 24

*United States v. Williams*, 503 F.2d 50 (6th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . 22, 31

**District Courts**

*United States v. Cromitie, et al.*, 2011 WL 1842219 (S.D.N.Y. 2011). . . . . . . . . . . . . . 17

*United States v. Larson*, _ F.Supp.2d _, 2011 WL 3501732 (W.D.N.Y. 2011). . . . . . . . 14

*United States v. Lawson*, 2009 WL 4720325 (E.D. Kent. 2009).. . . . . . . . . . . . . . . . 1, 30

*United States v. Wilson*, 490 F. Supp. 713 (E.D. Mich. 1980). . . . . . . . . . . . . . . . 24, 25

**State Courts**

*People v. Salazar*, 362 N.W.2d 913 (Mich. Ct. App. 1985). . . . . . . . . . . . . . . . . . . . . . 35

**Constitutional Provisions**

U.S. Const. Amend. I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 28, 33, 34, 35

U.S. Const. Amend. V.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

**Federal Rules**

Fed. R. Crim. Pro. 29(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Evid. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed. R. Evid. 801, Advisory Committee Note to Subdivision (a). . . . . . . . . . . . . . . . . . . 27

Fed. R. Evid. 801(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 30

Fed. R. Evid. 801, Advisory Committee Note to Subdivision (c). . . . . . . . . . . . . . . . 27, 30

Fed. R. Evid. 801(d)(2)(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

**Treatises**

McCormick On Evidence §249 (6th ed. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Law Review Articles, and Other Authority**

Ben Trachtenberg, *Coconspirators, "Coventurers" And The
    Exception Swallowing the Hearsay Rule*, 61 Hastings L.J. 581 (2010). . . . . . 27-28

John F. Wirenius, *Speech Brigaded With Action: Undirected Advocacy
    And The First Amendment*, 32 Seton Hall L. Rev. 299 (2002). . . . . . . . . . . . . . 28

## Statement of Controlling Authority

*Baldwin v. Franks*, 120 U.S. 678 (1852),  *Stirone v. United States*, 361 U.S. 212 (1960), *United States v. Sliwo*, 620 F.3d 630 (6th Cir. 2010), *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978)*, United States v. Lawson*, 2009 WL 4720325 (E.D. Kent. 2009), *NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982) and  *Brandenburg v. Ohio*, 395 U.S. 444 (1969) provide the controlling authority for this Motion.

## Statement of Issues Presented

Whether the government is attempting to constructively amend the Indictment against the defendants at the last hour?  Whether the government has failed to establish proof beyond a reasonable doubt such that a reasonable jury could return guilty verdicts against David Stone, Jr. or any other defendant in this case?  Whether the conspiracy charges (Counts 1 & 2) are co-dependent on existence of proof supporting the plot alleged in the Indictment: i.e. that the defendants "planned... the killing of an unidentified member of local law enforcement," to be followed by an "attack on law enforcement vehicles during the funeral procession with homemade mortars, IEDS and EFPs"? Whether the government has failed to establish proof that there was any agreement to oppose by force the authority of the United States government?  Whether the government has failed to establish by a preponderance of the evidence that:  (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the statement being offered was made in furtherance of the conspiracy?  Whether the government has failed to establish that any statement is admissible as a "verbal act"?  Whether the seditious conspiracy statute is unconstitutional as applied to David Stone, Jr.?

**Statement of Facts**

David Stone, Jr. is the adopted and youngest son of defendant David Stone, Sr. The government's evidence established that Tina Stone had set-out David, Jr. and his fiancee Brittany Bryant's belongings for them to move to the Onsted home of Kevin Bryant  in September of 2009, just prior to the birth of their son. At the time of his arrest on March 27, 2010, David, Jr., Brittany and the baby had recently moved from Onsted to an apartment in Adrian.  Vol. 7, Agent Larsen, Tr. 104-105, 2/15/12; Vol. 24, 3/13/12, Steve Haug, Tr. 40.  They moved into the Adrian apartment on March 19, 2010.   Vol. 27, 3/16/2010, Tr. 37-38;  Gov. Ex. 65, 1D88, p. 34-36.

Both residences were searched by Federal agents.  No explosives, bombs,  guns, or anti-government/explosives literature were seized from either location.   In fact, nothing was seized from David, Jr.'s former residence.  No "action plans" to support a conspiracy were found despite the searches of these two locations and the seizure of David, Jr.'s computer and other electronic media.  The agents did make the decision to seize three bibles from his Adrian apartment and photographed Stone, Jr.'s completed 2009 Federal Income Tax Return, which was found on the premises.  See Def. Ex. 1006A-H; Vol. 21, 3/8/12, Tr. 92-107.

During the 20-month investigation of the Hutaree, David Stone, Jr. was present at a grand total of eight (8) training days.  Three (3) of those eight (8) days, he left early – including the final training day within the period of the investigation (February 20, 2010).  He was absent (or at worst a non-participant) during every single demonstration

2

and discussion of supposed high-level explosive devices constructed and demonstrated by the undercover agent: 8/13/2009; 8/27/2009; 1/14/2010; the email exchange from 1/17-1/20/2010; 2/20/2010; 3/13/2010; and 3/18/2010.  There is no evidence David, Jr. was ever tasked with obtaining components for WMDs; nor is there a shred of evidence that he ever provided anything in support of the undercover's supposed WMD venture.

Most importantly, the government's case establishes that over the entire 20-month investigation, David, Jr. did not utter a single critical or unkind word about local, state or Federal police, much less local, state or Federal government.  Vol. 7, Agent Larsen, Tr. 105-106, 2/15/12; Vol. 16, 2/29/12, Dan Murray, Tr. 101-102.   He never once came even close to adopting the anti-government rhetoric of others, let alone joined a so-called plot to oppose by force the United States government.

Prior to the investigation, David, Jr. participated in some of the Hutaree's youtube videos.  See Gov. Ex. B & C; 2/14/12, Tr. at 49.   He was given the Hutaree nickname Grenmerk.  Vol. 18, 3/2/2012, Tr. 12.  During the investigation, David, Jr. attended a meeting at the Schiel property on October 18, 2008; a meeting at Mark Koernke's home on November 15, 2008 where the Hutaree members stayed out of the room in which Koernke gave his speech; and a meeting with Pastor Eric Jackson on February 1, 2009. Vol. 10, Dan Murray, Tr. 73-74; 86-88; 2/21/12.  On the November 2008 recording, David, Jr. explained that he was 18 years-old and that Mark Koernke was not a member of the Hutaree.  Gov. Ex. 2A.

3

David, Jr. participated in training on January 17, 2009; that training was terminated early due to the cold weather.  Vol. 11, 2/22/12, Dan Murray, Tr. 27, 30.  The first complete training Stone, Jr. attended during the investigation was on February 28, 2009; however, the group simply engaged in "practice firing and that was about it."  Vol. 12, 2/23/12, Dan Murray, Tr. 13-14, 20.  At this training, David, Jr. told Dan Murray that his girlfriend Brittany was pregnant and that it was "awesome" that they had a baby on the way.  Vol. 16, 2/29/12, Tr. 98.   David, Jr. was "excited about the impending birth of his child" according to CHS Murray.  *Id*. at 99.

David, Jr. allegedly attended an overnight training on March 27th, 2009 at the Tomer Road property.  No recording was made by Dan Murray on this date and the undercover agent, Steve Haug, did not attend.  According to Murray, however, David, Jr. was not on his father's "team" that night, so there is no basis to conclude that he even heard any of Stone, Sr.'s comments.  Vol. 12, 2/23/12, Dan Murray, Tr. 22-23.   On June 13, 2009, at the direction of his father during a trip-wire avoidance training, David, Jr. "set off" some cardboard devices which had a charge that was "a little more than an M80" firecracker.  *Id*. at 30, 33; Vol. 16, 2/29/12, Dan Murray, Tr. 103; Vol. 22, 3/9/12, Steve Haug, Tr. 12, 14.   David, Jr. attended the morning session of training on August 22, 2009, but left early to go to work.  He was the only person to leave training early.  Vol. 12, 2/23/12, Dan Murray, Tr. 35-36; Vol. 23, 3/12/12, Steve Haug, Tr. 76-77.

David, Jr. and Brittany Bryant's baby – Elijah Ray Stone – was born on September 22, 2009. Vol. 27, 3/16/12, Steven Haug, Tr. 117; Gov. Ex. 59, pages 147-152.

David, Jr. attended a training at the North Adams Property on November 7, 2009. Vol. 24, 3/13/12, Steve Haug, Tr. 20-21. On January 9, 2010, David, Jr. attended a "hodge-podge" training at his dad's trailer. Vol. 13, 2/24/12, Tr. 25; Vol. 24, 3/13/12, Steve Haug. When Stone, Sr. explained the so-called April Operation to the group, David, Jr. was out in the forest building a blind with Team Ezra. Vol. 24, 3/13/12, Steve Haug, Tr. 55. Similarly, when Joshua Stone addressed his team regarding the April "Op," David, Jr. was not present, as he was not on Joshua's team that day. Vol. 24, 3/13/12, Steve Haug, Tr. 54.

The last training that David, Jr. attended was on February 20, 2010. Vol. 25, 3/14/12, Steve Haug, Tr. 39. David, Jr. had a conversation with Steve about his infant son and his job. He discussed how baby Elijah was "doing pretty good," "getting big," and eating well. David, Jr. also told Steve about his new job at Bishop Circle Assembly, where he worked daily from 4 a.m. until 2 p.m. assembling brake lines for Ford automobiles. David, Jr. expressed his desire to succeed on the job so that he would be moved from a temporary worker to a salary employee. He also expressed his desire to help his brother Joshua find a job there. Vol. 27, 3/16/12, Steven Haug, Tr. 117; Gov. Ex. 59, 1D84, 2/20/2010, pages 147-152. Either prior to or during a portion of the

training when some members of the group started to laugh and joke about harming police officers, David, Jr. left the property.  Vol. 26, 3/15/12, Steve Haug, Tr. 21.

In addition, David, Jr. attended a family barbeque on July 25, 2009 with his fianceé.  Vol. 22, 3/9/12, Steve Haug, Tr. 54.  Along with his fianceé and infant son, David, Jr. also attended the wedding ceremonies for his father and his brother Joshua on December 12, 2009 and March 13, 2010, respectively.  He was not a part of the wedding party of either celebration.  Vol. 13, 2/24/12, Dan Murray, Tr. 22-23;  Vol. 16, 2/29/12, Dan Murray, Tr. 99;  Vol. 24, 3/13/12, Steve Haug, Tr. 29; Vol. 25, 3/14/12, Steve Haug, Tr. 54.   At the wedding, David, Jr. again talked with Steve about his baby and his job, and mentioned that he had removed his guns from his home in Onsted and moved them over to his father's house for the protection of Elijah.  Vol. 25, 3/14/12, Steve Haug,  at 56; Vol. 26, 3/15/12, Steve Haug, Tr. 119.

From February 20th until March 27th, 2010, the FBI conducted "limited surveillance" of David, Jr.  Nothing out of the ordinary was observed; he "went to work when he was supposed to go to work" and "was home when he was supposed to be home [at his Onsted address prior to 3/19/10, and at his Adrian apartment thereafter] ."  Vol. 8, Agent Larsen, Tr. 102-103, 2/16/12.  David, Jr. was arrested on March 27, 2010.  Vol. 26, 3/15/12. Steve Haug, Tr. 21.  He was released on bond shortly after the arrests and has remained on bond "the entire time" since then.  Vol. 9, Agent Larsen, Tr. 100-101, 2/17/12.

**Argument**

**I.     The Conspiracy Charges In The Indictment Are Co-Dependent
        On The Single Alleged Plan.**

The Indictment alleges a specific agreement to a single plan as the basis for the

charges of seditious conspiracy (Count 1) and conspiracy to use a weapon of mass

destruction (Count 2):  David Stone, Sr. "planned with others the killing of an

unidentified member of local law enforcement," to be followed by an "attack on law

enforcement vehicles during the funeral procession with homemade mortars, IEDS and

EFPs."   See Second Superseding Indictment, R. 293, Count 1, p. 7-8; Count 2, p. 10-11

(specifically incorporating the allegations from Count 1).  The government alleges that

the seditious conspiracy "to oppose by force the authority of the Government of the

United States" formed in August of 2008 and that the conspiracy to use a weapon of mass

destruction against same formed "in or before June, 2009."  *Id*. at p. 5-6, 11.

The conspiracy to use weapons of mass destruction count utilizes the same

overarching agreement, objective, and means as the seditious conspiracy count. The

government has previously conceded this fact.  R. 232, Response In Opposition to

Motion to Dismiss, p. 3-5.  In the government's words: "Count Two incorporates by

reference the general allegations and the allegations of Count One [Seditious

Conspiracy], which provide a factual outline of the defendants' conspiracy to use

weapons of mass destruction."  G.Br. 4.  Futhermore, Magistrate Judge Komives made

this very finding in his Report and Recommendation Denying the Defendant's Motion to

7

Dismiss the Indictment: "The weapons of mass destruction and... §924(c)(1) charges are derivative of the seditious conspiracy count in Count 1."   R. 269, p. 3.   This Honorable Court affirmed the Magistrate's findings in full.  R. 297, p. 2, 10.  The Court also specifically recognized this charged "plan" in its previous order granting in part the defendant's Motion for A Bill of Particulars.  R. 448, 10/11/2011, p. 10 ("The indictment alleges David Stone and others planned to kill a law enforcement officer in hopes that officers from throughout the nation would come to Michigan for the funeral; the Hutaree would then attack law enforcement vehicles during the funeral procession with homemade mortars, IEDs, and EFPs.").

As a result, Counts 1 thru 7 hinge on the charge of seditious conspiracy.  As counsel for David Stone, Jr. asserted in his opening statement, this case involves the government's claim that these seven Defendants were members of "two conspiracies that were joined at the hip."  Vol. 5, p. 34.

In its recently filed Trial Memorandum, the government, incredibly, attempts to broaden the scope of the charged conspiracies against the defendants when it states that although there is "no specific date, place or target," and the proofs are "not certain whether the Hutaree intended to initiate the conflict or simply to engage in it once initiated by other forces," these facts are "of no moment."  R. 734, p. 16.

With all due respect to the government, the complete and utter failure of the proofs to establish the plan alleged in the *government's Indictment* is very much *of* the moment.  After an indictment has been returned, the charges may not be expanded

8

through amendment, except by a superseding indictment returned by the grand jury. *Russell v. United States,* 369 U.S. 749, 769-771 (1962). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir.1984).

When a prosecutor or court modifies an essential element of an offense contained in an indictment or otherwise *broadens* the possible bases for conviction from that which appeared in the indictment, it constitutes a violation of the Fifth Amendment right to presentment by a Grand Jury. *Stirone v. United States*, 361 U.S. 212, 215-216 (1960). Such an amendment is a "direct infringement" upon the Fifth Amendment "'guarantee' to hold a defendant answerable only for those charges levied by a grand jury" and is "considered prejudicial *per se*." *United States v. Combs*, 369 F.3d 925, 935-936 (6th Cir. 2004). Similarly, an attempt to charge two distinct offenses within a single count constitutes a "duplicitous" charge in violation of the due process clause of the Fifth Amendment. *United States v. Savoires*, 430 F.3d 376, 379-380 (6th Cir. 2005). The government's stunning admission regarding the proofs in this case, contained in its Trial Memorandum, and its attempt to broaden the Indictment at the last hour, must not be countenanced. *See also United States v. Swafford*, 512 F.3d 833, 843 (6th Cir. 2008)(finding fatal variance where the government's evidence showed multiple small conspiracies rather than the single large conspiracy charged in the indictment).

**II.**     **The Government Failed to Present Any Substantive Evidence That the Defendants Conspired to "Oppose By Force the Authority of the Government of the United States" Utilizing the Plan Charged in the Indictment.**

The government's theory of seditious conspiracy in this case is that the defendants agreed "to oppose by force the authority of the Government of the United States" by "plann[ing] the killing of an unidentified member of local law enforcement," to be followed by an "attack on law enforcement vehicles during the funeral procession with homemade mortars, IEDs, and EFPs."  See Second Superseding Indictment, R. 293, Count 1, p. 7-8; Count 2, p. 10-11 (specifically incorporating the allegations from Count 1).

In *Baldwin v. Franks*, the seminal case on seditious conspiracy, the United States Supreme Court defined specifically the meaning of the terms utilized by the government in the charging document here.  *Baldwin v. Franks*, 120 U.S. 678, 693 (1852).  In doing so, the Court emphasized the important distinction between a conspiracy to overthrow or levy war against the government and an agreement to oppose by force its authority:

> All, therefore, depends on that part of the section which provides a punishment for 'opposing' by force the authority of the United States... This evidently implies force against the government as a government. To constitute an offense under the first clause, the authority of the government must be opposed; that is to say, force must be brought to resist some positive assertion of authority by the government. A mere violation of law is not enough; there must be an attempt to prevent the actual exercise of authority...

10

> This... means something more than setting the laws themselves at defiance. There must be a forcible resistance of the authority of the United States while endeavoring to carry the laws into execution.

*Id*. at 693.

Because the acts of force described in the charging document were not alleged to be in opposition to the United States government "while [it was] actually engaged in an attempt" to assert its authority, the Supreme Court held that these charges were insufficient as a matter of law. *Id*. at 693-694.

Similarly, in *Anderson v. United States*, the Eighth Circuit dismissed seditious conspiracy charges because the facts pled indicated that the intended employment of force "was to be in a manner and for a purpose not within the statute." *Anderson v. United States*, 273 F. 20, 25-27 (8th Cir. 1921).  Relying on the Supreme Court's definitive construction of the same statutory language in *Baldwin*, the Eighth Circuit found that the force to be exerted "was not against those whose duty it should be to execute the laws [of the United States], and while attempting to do so."  *Anderson*, 273 F. at 26.

The government's proofs have established that David Stone, Sr. only mentioned the charged plot in its entirety on two occasions: (1) August 13, 2009, when only Steve Clark was present; and (2) February 20, 2010, when it is mentioned in a general and conditional manner just after Joshua Stone insists that strippers be used as decoys.  After the so-called 'plot' is described by Stone, Sr., he asks: "**Why not** just take care of the

situation? – kaboom, kaboom... I'm **thinking** IEDs." Emphasis added. But then he retreats from these queries and thoughts even further, and describes this scheme as only one of **"101 scenarios you could use**." See Gov. Ex. 59H, p. 221-224, 11-236. Emphasis added. Throughout the discussion, the participants are having numerous conversations, talking over one another, laughing, and using hyperbole. None of the participants ever even come close to an agreement to actually kill a police officer and attack a funeral. Significantly, the closest anyone comes to identifying a target is on February 6, 2010, when David Stone, Sr. issues a bluster-laden "guarantee" that he will "pop" an officer the group drives by who is a member of the Hudson police department. There is simply no agreement to anything approaching the plot alleged in the Indictment and certainly no agreement to oppose by force the United States government. While anti-government opinions are expressed over the 20-month investigation, such opinions, even when expressed with vigor and vim, cannot be fairly regarded as the equivalent of a criminal conspiracy. While this Court previously held that the Indictment sufficiently charged this section of the seditious conspiracy statute, the proofs that have come in during this trial have overwhelmingly failed to support the charge. "[T]he seditious conspiracy statute] should not be enlarged by construction." *Haywood v. United States*, 268 F. 795, 800 (7th Cir.1920). As a result, a judgment of acquittal should be entered for counts 1-7 on behalf of all of the defendants in this case.

12

**III.    Mere Presence, Association, Knowledge, Approval or**
**Acquiescence Is Not Sufficient to Convict a Defendant**
**of Conspiracy, Particularly In A Case Where Freedom**
**of Association is Implicated.**

At the close of the government's case-in-chief, the court on the defendant's

motion must enter a judgment of acquittal on any offense for which the evidence is

insufficient to sustain a conviction.  Fed. R. Crim. P. 29(a).  In reviewing the sufficiency

of the evidence under a Rule 29 Motion, the relevant inquiry is "whether, after reviewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *United*

*States v. Wallace*, 597 F.3d 794, 800 (6th Cir. 2010).

To sustain a conviction for conspiracy, the government must prove that each

defendant: (1) an agreed to the plan charged; (2) possessed the knowledge and intent to

join the conspiracy; and (3) participated in the conspiracy.  *United States v. Sliwo*, 620

F.3d 630, 633 (6th Cir. 2010).  Conspiracy charges require careful evaluation by the

district court because "so many prosecutors seek to sweep within the dragnet of

conspiracy all those who have been associated in any degree" with the main targets.

*United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999).  Indeed, the Sixth Circuit has

long recognized that the conspiracy laws "are opportunities of great oppression," and it is

only by "circumscribing the scope" of "all comprehensive indictments" that injustice can

be avoided.  *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973).  "Guilt with us

remains individual and

13

personal, even as respects conspiracies.  It is not a matter of mass application."

*Kotteakos v. United States*, 328 U.S. 750, 772 (1946).

Courts across the country have long cautioned that it is "dangerous to think of a conspiracy as a kind of club that one joins or a business in which one works.  Those metaphors falsely suggest that the member or employee automatically becomes legally responsible for the entire enterprise.  Instead, the gist of the conspiracy offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant."  *United States v. Glenn*, 828 F.2d 855, 847 (1st Cir. 1987).   This caution is magnified in a case implicating the rights to freedom of association and expression.  In such a case, a court is required to make a  "specially meticulous inquiry" into the government's evidence so that there is "not an unfair imputation of the intent or acts of some participants to all others," which would violate the First and Fifth Amendments. *NAACP v. Clairborne Hardware*, 458 U.S. 886, 920 (1982).  Application of the *strictissimi juris* standard is of the utmost importance in criminal cases involving members of an organization that has "both legal and [allegedly] illegal aims," with its legal aims including freedom of speech and/or advocacy.  *Scales v. United States*, 367 U.S. 203, 229 (1961);  *United States v. Dellinger*, 472 F.2d 340, 393 (7th Cir.1972); *United States v. Larson*, __ F.Supp.2d __, 2011 WL 3501732, *19 (W.D.N.Y. 2011)(holding that although the doctrine cannot be used to dismiss an indictment, "the *strictissimi juris* standard of review for **sufficiency of the evidence** applies where an organization is shown to engage in both legal and illegal conduct, and

14

where the organization's conduct is within the shadow of the First Amendment.").
Emphasis added.

When the government wields the Damoclean sword of a conspiracy charge in proximity to the rights guaranteed by the First Amendment, the government must produce "clear proof that a defendant 'specifically intends' to accomplish the aims of the organization by resort to violence." *Scales*, *Id*. citing *Noto v. United States*, 367 U.S. 290, 299 (1961). There is a compelling "need for care in analyzing the evidence against a particular defendant in a case of this type, both by the jury in its fact-finding process and by the court in determining whether the evidence is capable of convincing beyond a reasonable doubt." *Dellinger*, 472 F.2d at 393.

In light of the significant dangers in this case, the burden of proof in establishing a defendant's intent to join and participate in the charged conspiracy is exacting. It is well established that mere presence, association, knowledge, approval or acquiescence is not sufficient to convict a defendant of conspiracy. *Sliwo*, 620 F.3d at 636; *United States v. Coppin*, 1 Fed.Appx. 283 (6th Cir. 2001); in accord *United States v. Williams*, 503 F.2d 50, 54 (6th Cir. 1974)("Mere knowledge, approval of or acquiescence in the object or the purpose of the conspiracy, without an intention and agreement to cooperate in the crime is not sufficient to make one a conspirator."). In order to be found responsible for conspiring with others, the government must prove that the defendant "was fully aware of the object of the conspiracy and that he voluntarily associated himself with it to further its objectives." *Gibbs*, 182 F.3d at 421.

"[C]onjecture and surmise regarding what a defendant may have intended or known is insufficient to support a conviction" in a conspiracy case.  *United States v. Coppin*, 1 Fed.Appx. 283, 291 (6th Cir. 2001).  For instance, evidence "that defendants knew each other, grew up together" and "on occasion" committed illegal acts together "fails to prove membership in the conspiracy."  *Id*. at 423.  Put another way, the particular defendant "must in some sense promote the [criminal] venture himself, make it his own, have a stake in its outcome."  *Bostic*, 480 F.2d at 968.   Only concrete evidence of "the defendant's intent, knowledge of and agreement to join" the specific conspiracy set forth in the indictment will suffice.  *Coppin*, 1 Fed.Appx. at 291.

In *Sliwo*, the defendant appealed the denial of his Rule 29 motion for judgment of acquittal and the Sixth Circuit reversed his conviction.  *Sliwo*, 620 F.3d at 632-633.  The Court found that although the defendant participated in the plan and observed over 900 pounds of marijuana as it was loaded into a van, the government failed to provide sufficient evidence to allow a reasonable jury to find that he had entered into "an agreement to violate drug laws."  *Id*. at 633.  In addition, a defendant's knowledge of some illegal activity is insufficient as a matter of law to establish knowledge of "the essential object of the conspiracy."  *Id*. at 634 quoting *United States v. Morrison*, 220 Fed.Appx. 389, 395 (6th Cir. 2007).   "Evidence that a defendant knowingly worked with his alleged co-conspirators "says nothing about whether Defendant knew... the ultimate purpose of the conspiracy."  *Sliwo*, 620 F.3d at 634.

The WMD charge is also gravely lacking, as the government failed to establish

16

even minimal proof that any defendant agreed to use a WMD, much less in the course of the plot alleged in the indictment.  To the contrary, the government presented evidence that David Stone, Sr. was "afraid" of handling high explosives.  Contrast *United States v. Cromitie, et al.*, 2011 WL 1842219, *2-3, 8 (S.D.N.Y. 2011)(Although undercover recordings revealed defendant using "some of the most hateful, bigoted and ignorant statements to which this court has ever been exposed... he was reluctant to walk the walk."  Just as the FBI was about to shelve the investigation, Cromitie himself reopened the matter and, along with the three other defendants, became a willing participant, ending with Cromitie and his cohorts taking actual possession of inert bombs believed to be lethal, and then personally "plant[ing]" them at the Riverdale Temple and Riverdale Jewish Center."  Rule 29 denied.).

As in *Sliwo*, and in contrast to *Cromitie*, here the government has conspicuously failed to produce evidence of any agreement, knowledge, and/or intent to join and further a conspiracy.

17

**IV.    The Out-of-Court Statements Made on the Recordings in this Case Are Not Admissible under Fed. R. Evid. 801(d)(2)(E).**

For out-of-court statements to be admissible under Rule 801(d)(2)(E), three foundational requirements must be established.  *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979).  The government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the statement being offered was made in furtherance of the conspiracy.  *United States v. Martinez*, 430 F.3d 317, 325 (6th Cir. 2007).  "Preliminary questions concerning... the admissibility of evidence shall be determined by the court" through distinct findings of fact – often referred to as "*Enright* findings." *Id*. citing *United States v. Enright*, 579 F.2d 980, 986 (6th Cir. 1978).  In determining the admissibility of conconspirator statements under Rule 801(d)(2)(E), the court may consider the coconspirator statements.  *See Bourjaily v. United States*, 483 U.S. 141, 178-181 (1987).  However, "[t]he contents of the statements... are not alone sufficient to establish... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)."  Fed. R. Evid.  801(d)(2).   The statements "must be corroborated by independent evidence." *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006).  As this Honorable Court accurately summarized in a prior order: the government must establish that the defendant was "a member" of a conspiracy "with a specific and established objective."  Order, R. 268, p. 8, 1/4/2011.

18

In this case, the government's witnesses have conceded that at the time of the arrests, there was no specific target, no specific plan, no specific location, no specific date, and no specific time.  Nor was any clear objective ever established.

### A.    The Government has failed to establish the existence of any conspiracy.

Before co-conspirator statements may be admitted, the government must first establish by a preponderance of the evidence that a conspiracy existed. *Vinson*, 606 F.2d at 152.  The government witnesses have conceded that no specific plan, no specific target, no specific place, and no specific time were ever identified in this case.  The government witnesses have conceded that the plan alleged in the Indictment was not even articulated until August 13, 2009, and the only individual present at that time was the undercover agent, Steve Haug.  On February 6, 2010, when David Stone, Sr. issues what Agent Vaughan conceded was at best a "vague threat" against an unnamed Hudson police officer and other members of the department during the Kentucky Militia Summit road trip, not one of the people present - Tom Piatek, Joshua Stone, or Mike Meeks voiced any hint of approval or agreement.  And on February 20, 2010, when various members of the Hutaree engage in offensive discussions regarding violence against police officers, the defendants who are present consistently use conditional language such as: when, if, should, and could.  Many of the statements are explicitly conditional; some are obvious fantasy; others are warped jokes; and nearly all are uttered within a

19

hyperbolic and histrionic chamber of improvised, context-specific venting and boasting. Simply put, no defendant ever agrees to the plot alleged in the indictment.

A crucial fact in evidence is that no offensive use of force was ever authorized by David Stone, Sr. – even in the event of war. Gov. Ex. 124D - Rules of Engagement/Color Code for Action: **War is condition black: "DEFENSIVE USE OF FORCE AUTHORIZED."**  Two weeks before the arrests Stone, Sr. had no plan, no target, no place, and no time for the charged plot. Vol. 27, 3/16/2010, Tr. 40-42.  The group's membership was waning and participation was low. Alfie The Medic had just committed suicide, setting the war back at least a year. Gov. Ex. 59C, 2/20/2010, p. 75-84.  The Hutaree motorized bicycle team had not been assembled and neither the bikes nor the motors nor the mufflers had been obtained. Vol. 27, 3/16/2010, Tr. 28-29; Gov. Ex. 49, 1D74, p. 76-77. David Stone, Sr. also wanted to create a tower to generate his own fuel prior to the onset of war. *Id.*  He reiterated the necessity of the fuel tower again in February of 2010. Vol 27, p. 33.  Agent Haug admitted on cross-examination that "copper disks" were required to make these explosives and he was never given any of these items by any member of the Hutaree. Crucially, according to both the confidential informant and the undercover agent, the Hutaree never once trained to attack a funeral procession.

**B.**    **There is No Evidence Whatsoever That David, Jr. Agreed to Participate In, Or In Any Fashion Furthered, a Criminal Conspiracy.**

To show a conspiracy, it is "absolutely essential" to prove that there was an agreement between the named conspirators. *Elder-Beermen Stores Corp. v. Federated Dept. Stores, Inc*., 459 F.2d 138, 140 n. 5a (6th Cir. 1972). Merely discussing the desirability of criminal acts does not constitute an agreement to perform such acts; perhaps more importantly, mere presence when such discussions are taking place does not a co-conspirator make. Yet further, the failure to even be present for such discussions, as was the case with David, Jr., would appear to be exculpatory. Taking the government's evidence in its best light, David, Jr. is not ever present when the alleged plot is discussed, and on the one day that he may have been present for some anti-law enforcement rhetoric  – February 20, 2010 – he swiftly departed. If anything, his failure to participate and swift departure is an indication of his disagreement with the anti-police opinions being uttered. The Supreme Court has explained that "to establish the [requisite] intent, the evidence of knowledge must be clear, not equivocal . . . because charges of conspiracy are not to be made out by piling inference upon inference." *Ingram v. United States*, 360 U.S. 672, 680 (1959) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)).

To prove that David, Jr. conspired, the government must show that he "was aware of the objects of the conspiracy, and that he voluntarily associated himself with it to

further its objectives." *United States v. Warman*, 578 F.3d 320, 333 (6th Cir. 2009) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)). Put another way, "[s]pecific intent to join is an essential element of the crime of conspiracy." *United States v. Brown*, 332 F.3d 363, 372 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1120 (6th Cir. 1996)).

Furthermore, "it is clear that it takes more than close and repeated association with those who are proved to be operating an illegal enterprise to make one a coconspirator." *Sliwo, Id.*; *United States v. Anderson*, 352 F.2d 500, 501 (6th Cir. 1965). The law of conspiracy, while broad, does not impugn individuals on the ground of guilt by association: "mere association with the members of a conspiracy without the intention and agreement to accomplish an illegal objective is not sufficient to make an individual a coconspirator." *United States v. Lee*, 991 F.2d 343, 348 (6th Cir. 1993). Additionally, mere presence is insufficient to establish participation in a conspiracy. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). Summarily, "'mere knowledge, approval of or acquiescence in the object or the purpose of the conspiracy, without an intention and agreement to cooperate in the crime' is not sufficient to make one a conspirator." *United States v. Richardson*, 596 F.2d 157, 162 (6th Cir. 1979) (quoting *United States v. Williams*, 503 F.2d 50, 54 (6th Cir. 1974)).

Even if the government is able to identify some criminal conspiracy, there is no evidence that Stone, Jr. agreed to participate in it. Seemingly, most—if not all—of the government's evidence of Stone Jr.'s "agreement" and "knowing participation" consists

of membership in the Hutaree and/or attendance at "training" sessions where a few other members engaged in controversial speech – most often, not even in his presence. The supposed "plan" is first mentioned on August 13, 2009 in the presence of Agent Haug only.

The only other time the plan is mentioned is on February 20, 2010, and again by Stone, Sr. But it is mentioned in a general and conditional manner just after Joshua Stone insists that strippers be used as decoys in any plan. After the so-called 'plot' is described, Stone, Sr. asks: "**Why not** just take care of the situation? – kaboom, kaboom... I'm **thinking** IEDs." Emphasis added. But then he retreats from these queries and thoughts even further, and describes this scheme as only one of **"101 scenarios you could use**." See Gov. Ex. 59H, p. 221-224, 11-236. Emphasis added. Throughout the discussion, the participants are having numerous conversations, talking over one another, laughing, and using hyperbole. Notably, David Stone, Jr. was either absent for this multi-layered discussion, or he left in the midst of it without speaking. Vol. 26, 3/15/12. Steve Haug, Tr. 21.

Three weeks later, on March 13, 2010, at Joshua Stone's wedding, David Stone, Sr. had moved even further from anything resembling a "plot." He addressed the group and told them that the Hutaree are not radicals or skinheads – they follow the law. When Steve asked Stone, Sr. whether there was a target, Stone, Sr. tells him three straight times in no uncertain terms that there is no target and that any use of the weapons would not likely be local, as the war could "kick in" in any number of states across America.

Simply put, there is not any evidence, let alone a preponderance of the evidence, to suggest that David, Jr. or anyone else joined a criminal conspiracy to use illegal force and weapons of mass destruction against the United States government.

### C.   The Statements Were Not Made In Furtherance of the Conspiracy.

For statements to meet the exception, they must have been uttered "in furtherance" of the conspiracy.  *Vinson*, 606 F.2d at 152;  *see also Wong Sun v. United States*, 371 U.S. 471, 490 (1963)(this "very narrow exception" reaches only statements "in furtherance of conspiracy");  *Krulewitch v. United States*, 336 U.S. 440, 443-44 (1949)(noting that the requirement that statements be made "in furtherance of the conspiracy charged" is one that "has been scrupulously observed" by federal courts). Even if this Court were to find that a preponderance of the evidence indicates that a conspiracy exists, the statements on the recordings played before the jury were not made in furtherance of such an agreement. Most, if not all, of the statements were mere idle chatter; conditional bragging; improvised and context-specific venting; casual, rambling, topic-flitting conversations; or narrative declarations – none of which satisfy the "in furtherance" requirement of the co-conspirator exception.  *See Warman*, 578 F.3d at 338-339 ("bragging" and "boasting" statements not admissible as being in furtherance of conspiracy); *United States v. Conrad*, 507 F.3d 424, 430 (6th Cir. 2007)("idle chatter" and "casual conversation" are not "in furtherance" of a conspiracy; convictions reversed); *United States v. Cornett*, 578 F.3d 776, 784 (5th Cir. 1999)(statements made during

"diverse" conversation at bowling alley, which included references to "exotic dancers," were not in furtherance of conspiracy and denied defendant his right to a fair trial); *United States v. Wilson*, 490 F. Supp. 713, 717 (E.D. Mich. 1980)(holding that narrative declarations not tending to draw listener into conspiracy or otherwise further it are not made in furtherance of conspiracy as required by the exception).

Furthermore, a few specific references to an imaginable plan of action within a much larger and more generic anti-authority diatribe should not make a sporadic statement admissible. As the Supreme Court observed in *Yates*:

> Instances of speech that could be considered to amount to 'advocacy of action' are so few and far between as to be almost completely overshadowed by the hundreds of instances in the record in which overthrow, if mentioned at all, occurs in the course of doctrinal disputation so remote from action as to be almost wholly lacking in probative value.

*Yates v. United States*, 354 U.S. 298, 327 (1957). While *Yates* did not specifically reference the "in furtherance" prong of Fed. R. Evid. 801(d)(2)(E), the Supreme Court's reasoning is applicable.

Here, the government has pored through hundreds of hours of tape, isolated mere moments, and provided them to the Court and the jury as alleged proof of "seditious conspiracy"/"conspiracy to use a WMD." In reality, the statements alleged to be made "in furtherance" of a criminal conspiracy were usually just theatrical components of David Stone, Sr.'s bluster-filled rants about law enforcement, the "New World Order," an impending takeover by the United Nations, and the coming of the Anti-Christ.

It seems that very few, if any, of the conversations were meant to draw individuals into any criminal conspiracy.  Tactics and strategy as related to specific criminal operations are not ever discussed.  The defendants never once train to attack a funeral procession.  The statements are almost all the product of context-dependent, improvised, and hyperbolic venting or boasting, and/or subjective interpretations of prophecy.  Due to the rambunctious nature of the speech, it is entirely unclear which individuals even heard particular statements.  This speech, while controversial and at times vile, fails to satisfy the "in furtherance" requirement.

**V.    There Are Very Few, If Any, Out-of-court Statements on the Recordings That Are Admissible as "Verbal Acts."**

The "verbal acts" doctrine must be narrowly applied.  McCormick On Evidence §249 (6th ed. 2009).  When "verbal conduct" is proffered as a basis of admissibility, the Court is required to make "a preliminary determination... *whether an assertion is intended*" before such a statement may be admitted.  Fed. R. Evid. 801, Advisory Committee Note to Subdivision (a).  Emphasis added.  A statement can only constitute a non-hearsay "verbal act" when "no issue is raised as to the truth of *anything* asserted." Fed. R. Evid. 801, Advisory Committee Note to Subdivision (c).  Emphasis added.

As the proponent of the designated out-of-court statements, the government has the burden to establish admissibility.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The claim that an out-of-court statement is admissible as a "verbal act" in a conspiracy case is a "justification of dubious credibility."  Ben Trachtenberg, *Coconspirators, "Coventurers" And The Exception Swallowing the Hearsay Rule*, 61 Hastings L.J. 581, 629 (2010).  In deciding on admissibility, the Court must "focus on whether the declarant intends to make an assertion and whether the statement is [to be] used for the truth of the matter asserted."  *McCormick*, *Id*. at n. 10.  This emphasis on the traditional hearsay definition, particularly in the context of a conspiracy case, is necessary to prevent the use of the exception as a pretext to avoid other bars to admission; for when a party claims that a statement is an act under FRE 801(c), "no one really believes it."  61 Hastings L.J. at 629.  "After all, if a piece of evidence proffered

27

for admission at trial is not a 'statement,' and accordingly cannot be 'hearsay,' the proponent need not resort to any 'hearsay exception.'" *Id*.

The government argues that "[m]ost of the statements of the defendants in this case... are not being offered for the truth of the matter asserted, but as verbal acts constituting evidence of the conspiracy" pursuant to Fed. R. Evid. 801(c). R. 734, Gov. Trial Memorandum, p. 2. Given the government's preferred basis for admission, it stands to reason that it must, as a prerequisite, establish that an agreement to a criminal conspiracy (with identifiable participants) actually existed prior to the date of the alleged verbal acts. Because the government's own evidence fails to even minimally prove a conspiracy existed at all, any claimed verbal acts are inadmissible.

Aside from the failure to meet this prerequisite, it appears that the government is attempting to avoid the First Amendment rights to freedom of expression, association, assembly and religion, as well as the rule against hearsay and Rule 801(d)(2)(e), by requesting a wholesale reclassification of assertive statements as "verbal conduct." In the context of the First Amendment, "verbal acts" are those words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. State of New Hamphsire*, 315 U.S. 568, 572, 574 (1942). "A verbal act, surely, must be the equivalent of a physical act in that it has consequences on its own" and the narrow exception cannot be used as a "catch-all method to avoid the dictates of the First Amendment." John F. Wirenius, *Speech Brigaded With Action: Undirected Advocacy And The First Amendment*, 32 Seton Hall L. Rev. 299, 345 (2002). If the materiality of

the statement rests in its substance rather than its utterance, or it contains conditional language indicative of an assertion, the utterance does not have "independent legal significance" and is inadmissible as a "verbal act." *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 717 (6th Cir. 1999).

The example proffered by the government in court as a "verbal act" was David Stone, Sr.'s statement that if immunizations were forced on citizens, the group would go to war.  Vol. 29, p. 139-140; Gov. Ex. 34(c), (d) and (e), Recording 1D48, 9/13/2009. While the government apparently believes this statement is admissible as a verbal act because it is not premised on the truth of the matter asserted, it overlooks the fact that the statement makes two assertions: 1) that forced immunization would spur a war; and 2) that the Hutaree would, **as a group**, fight that war.  While the government may not be admitting the statement to prove that forced immunizations would indeed spur a war, surely the government cannot be arguing that this statement evidences an existing conspiracy if it is not seeking admission to establish the truth of the *other* matter asserted - namely that they would act in concert. See *United States v. DeCologero*, 530 F.3d 36, 59 (1st Cir. 2008)(Court upholds judge's refusal to admit statements as "verbal acts" or as "non-hearsay" because any proffered relevance under Rule 401 required that the proffered content of the statement be true); *United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003)(statements that are proffered to establish "context" are still hearsay if they require the relevant portion to be true).  As previously emphasized, the advisory comments to the Federal Rules of Evidence clarify that a statement can only constitute a

29

non-hearsay "verbal act" when "**no issue** is raised as to the truth of **anything** asserted." Fed. R. Evid. 801, Advisory Committee Note to Subdivision (c). Emphasis added. As a result, if any part of a proffered statement relies on the truth of the matter asserted, it is not admissible as a verbal act.

The government also overlooks the fact that in this circuit, courts have only "allowed admission of statements under the verbal act theory" when "the words themselves constituted a crime." *United States v. Lawson*, 2009 WL 4720325, *2 (E.D. Kent. 2009)(following pretrial *Enright* hearing, court finds recordings inadmissible under FRE 801(d)(2)(e) or as "verbal acts" under 801(c)); see also *United States v. Diaz*, 597 F.3d 56, 65 (1st Cir. 2010)(in conspiracy case, district court's admission of six statements as "verbal acts" found to be harmless error because none of the statements implicated the appellant in his co-conspirator's activities). As a result, all of the government's case citations are easily distinguishable. In *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008), the sole statement allowed into evidence as a verbal act was a solicitation to commit a murder by a co-conspirator that occurred prior to the existence of the charged conspiracy. Similarly, in *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-315 (6th Cir. 2009), "ten successive solicitations for heroin" made to the defendant via phone calls after his arrest (and the termination of the conspiracy) were held to be verbal criminal acts. *In accord Anderson v. United States*, 417 U.S. 211, 220, n. 9 (1974)(government introduced prior "testimony" of two co-defendants at an election hearing as verbal acts to establish that their testimony was "false" to the point of "perjurious"); *United States v.*

*Hamilton*, 689 F.2d 1262, 1270 n.4 (6th Cir. 1982)(Ordering explosives to be used to

carry out a criminal conspiracy constitutes a verbal act); *United States v. Brewer*, 332

Fed. Appx. 296, 302 (6th Cir. 2009)("Solicitations to commit a series of crimes involving

the misappropriation of public resources" were admissible as verbal acts).

  Even if this Honorable Court decides that some statements are admissible as

"verbal acts," the government has not proffered any authority indicating that such verbal

acts are admissible against all of the defendants.  It is well established that mere

presence, association, knowledge, approval or acquiescence is not sufficient to convict a

defendant of conspiracy.  *United States v. Sliwo*, 620 F.3d 630, 633, 636 (6th Cir. 2010);

*United States v. Coppin*, 1 Fed.Appx. 283 (6th Cir. 2001); in accord *United States v.*

*Williams*, 503 F.2d 50, 54 (6th Cir. 1974)("Mere knowledge, approval of or acquiescence

in the object or the purpose of the conspiracy, without an intention and agreement to

cooperate in the crime is not sufficient to make one a conspirator.").   If the example of a

verbal act offered by the government in court is indicative of other statements it wishes to

admit on the same basis, there will be fundamental facts which militate against such

admission.  The overwhelming majority of the statements on the tapes are made by David

Stone, Sr. in the midst of  rants and monologues where no defendant manifests

"approval" or adoption of the opinions expressed – if it can be shown that the defendants

were even present and heard those opinions.

  Finally, prior to trial the government stated that it would only be admitting

documents from the property of a defendant as evidence of the intent of that particular

defendant. Only now, at the close of its case-in-chief, does the government "suggest" that this evidence be admitted as "an act of a conspirator that may be admitted against other members of the conspiracy."  Gov. Trial Memorandum, R. 734, p. 28.  To put it bluntly, the government has waived this argument for admission, and David, Jr. strongly objects to the admission of any documentary evidence seized from any other defendant's residence as evidence of David, Jr.'s participation in a conspiracy.

**VI.    The Seditious Conspiracy Statute is Being Unconstitutionally Applied to David Stone, Jr. In Violation of the First Amendment.**

The crimes of seditious conspiracy and insurrection are inherently political, and as a result, these time-worn "formulae for the repression of expression... can claim no talismanic immunity from... the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).  In fact, it was the fear-driven passage of the Sedition Act of 1798, and the subsequent political persecution that masqueraded as enforcement, which "first crystallized a national awareness of the central meaning of the First Amendment." *Id*. at 273-274.

Courts "must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Watts v. United States*, 394 U.S. 705, 707 (1969) citing *New York Times Co.*, 376 U.S. at 270. Free speech "best serves its higher purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).  Even speech that a "vast majority of its citizens believe to be... fraught with evil" cannot be punished unless there is a clear and present danger. *Whitney v. California*, 274 U.S. 357, 374 (1927).  In sum, a statute, as applied, may only criminalize expression when the speech, thought, and/or assembly is directed to

inciting or producing imminent lawless action in accord with the charged offense, and is

likely to produce or incite such action.  *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).

In *Herndon v. Lowry*, the Supreme Court reviewed the application of a state

"insurrection" statute similar to the seditious conspiracy provision at issue in the instant

case.  The Court emphasized the importance of specificity in the construction of statutes

which implicate speech and association in their application:

> [W]here the statute merely prohibits certain acts involving danger of
> substantive evil, without any reference to language itself, and it is sought
> to apply its provisions to language used by the defendant for the purpose
> of bringing about the prohibited results... [and] it [is] contended that the
> statute cannot be applied to the language used by the defendant because of
> its protection by the freedom of speech or press, it must necessarily be
> found [by the court]... whether the specific language used involved such
> likelihood of bringing about the substantive evil as to deprive it of
> constitutional protection.

*Herndon v. Lowry*, 301 U.S. 242, 258 (1937).

In *Herndon*, the defendant was charged with an attempt to induce "combined

resistance to the lawful authority of the state with intent to deny, defeat, and to overthrow

such authority by open force, violent means, and unlawful acts."  *Herndon*, 301 U.S. at

245. The Supreme Court first emphasized that the documentary evidence did not indicate

an intent to incite forcible subversion of "the lawful authority of the State" of Georgia.

*Herndon*, 301 U.S. at 253.  "The power of a state to abridge freedom of speech and

assembly is the exception rather than the rule" and the act of "penalizing" speech must,

therefore, "find its justification in a reasonable apprehension of danger to *organized

government*." *Id*. at 258 (emphasis added).  The Court distinguished the future threat of

34

violence against government at some indefinite time (as part of the group's "ultimate ideal"). *Id*. at 260-261, 263. The Court found that the insurrection statute, as construed and applied at defendant's trial, violated Herndon's First Amendment rights to freedom of speech and association because there was no "clear and present danger of forcible obstruction of a particular state function." *Id*. at 261.

The *Brandenburg* test was also applied more recently in a case charging the defendants with conspiracy to commit interstate stalking, conspiracy to use a telecommunications device to abuse, threaten, and harass, and conspiracy to violate the Animal Enterprise Protection Act (AEPA). *United States v. Fullmer*, 584 F.3d 132, 154 (3rd Cir. 2009); *see also United States v. Phipps*, 595 F.3d 243, 247 (5th Cir. 2010)(applying *Brandenburg* to mail-wire fraud, aiding and abetting, and corrupt endeavoring to obstruct internal revenue laws); *United States v. Kelly*, 864 F.2d 569, 577 (7th Cir. 1989)(same). Similarly, the "imminence"/"clear and present danger" test has invalidated convictions for conspiracy to "injure, oppress, threaten or intimidate" in order to violate another's civil rights (*United States v. Lee*, 6 F.2d 1952 (8th Cir. 1993)); solicitation (*People v. Salazar*, 362 N.W.2d 913, 917-918 (Mich. Ct. App. 1985)); conspiracy to defraud the United States government (*United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983)); and conspiracy to incite violence against the United States government (*United States v. Silverman*, 248 F.2d 671 (2nd Cir. 1957)). The court should find that the application of the seditious conspiracy statute to these defendants constitutes a violation of the First Amendment.

## Conclusion

The government has utterly failed to provide this court with proof by a preponderance of the evidence that any conspiracy at all existed in this case.  Similarly, the government has failed to provide proof beyond a reasonable doubt sufficient for a reasonable jury to return a verdict of guilt.  In fact, the government has failed to present any evidence whatsoever that David Stone, Jr. was a member of a conspiracy if one existed.  No evidence exists to carry on this charade of a case against David , Jr. any longer.  He respectfully requests that a judgment of acquittal be entered on Counts 1-7: i.e. the conspiracy charges and all charges that rely on those conspiracies as predicate offenses.

Respectfully submitted,

Legal Aid & Defender Association
**FEDERAL DEFENDER OFFICE**

s/ Richard M. Helfrick
E-mail: Richard_Helfrick@fd.org

s/ Todd A. Shanker
E-mail: Todd_Shanker@fd.org
Counsel for David Stone, Jr.
613 Abbott St., 5th Floor
Detroit, MI 48226
Dated: March 23, 2012                    (313) 967-5542

36

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                             Case No. 10-20123

v.                           Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

        Defendant.

_____/

## CERTIFICATE OF SERVICE

      I hereby certify that on March 23, 2012, I electronically filed the foregoing
Motion and Brief with the Clerk of the Court using the ECF system, which will
send notification of such filing to the following:

                  Sheldon N. Light
                  Christopher Graveline
                  Assistant U.S. Attorneys

                        Respectfully submitted,

                        Legal Aid & Defender
                        **Federal Defender Office**

                        s/ Todd A. Shanker
                        613 Abbott St., 5th Floor
                        Detroit, MI 48226
                        Phone:  (313) 967-5542