UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CRIMINAL NO. 2:10-cr-20123

HON. VICTORIA A. ROBERTS

D-1  DAVID BRIAN STONE, et al.

    Defendants.

_____/

## DAVID BRIAN STONE'S
## SENTENCING MEMORANDUM

**Summary of Argument**

The Sentencing Guidelines are correctly calculated in this case. Given the Guideline range, the length and conditions of pretrial detention, and all of the other sentencing factors, Defendant should receive a sentence of time served. He should not be required to return to government custody. Defendant will summarize here a number of important factors that support a sentence of probation.

**Facts**

This Court well knows the facts of this case. The biological data regarding the life of Mr. Stone is generally, accurately detailed in the presentence report. In person, David Brian Stone is a man who has not criminal record and has lived his life as close to his Biblical beliefs as he could. He has raised his children in what he believed to be a Godly manner. He has lived in

rural Michigan and grown up in a culture involving the lawful ownership and use of firearms.

No one was ever threatened with any of the weapons involved in the offense of conviction, or in the relevant conduct.  There was no testimony that David Stone ever fired any of the automatic weapons during the "training" exercises.  Even if there were reason to believe the weapons were fired, it is clear that David Stone only fired weapons at inanimate targets, not people.

**18 USC §3553(a) Sentencing Principles**

Although the Courts are required to calculate and "consider" the sentencing guidelines, District court judges are mandated to determine the appropriate sentence under § 3553(a) completely independently of the Guidelines, *Rita v. United States, 127 S. Ct. 2456 (2007)*.  The Court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of *§ 3553(a)(2). Id.*  This "parsimony" provision is not just another "factor" to be considered along with the others set forth in the Section 3553(a), it sets an independent limit on the sentence a court may impose.

The district judge 'must make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007)(quoting *Gall v. United States*, 552 U.S. ----, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)).  Although the Sentencing Commission "fills an important institutional role" in promulgating the Guidelines, the sentencing judge "has greater familiarity with the individual case and the individual defendant before him . . . [and] is therefore in a superior position to find facts and judge their import under § 3553(a) in each particular case." *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotations and citations omitted).

The overriding principle and basic mandate of Section 3553(a) requires District Courts to

impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing:

> a. Retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");
> b. Deterrence;
> c. Incapacitation (to protect the public from further crimes"); and
> d. Rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").
> 
> *United States v. Montanez,* 442 F3d 485,494 (6th Cir, 2006)

**Application of sentencing principles to these facts**

Defendant believes that the Court should analyze the *18 U.S.C. § 3553(a)* sentencing principles and factors as follows:

(1) *The nature and circumstances of the offense and the history and characteristics of the defendant*;

David Brian Stone is a first-time, non-violent offender. He is a United States citizen, 47 years old, and a married father of 4 children, and 4 grandchildren. He has a high school education and strongly held religious beliefs. He has always been a working man, scratching out a living however he could.

The nature of this offense is a technical one. While engaging in what he thought was appropriate preparation for the end of the world, he trained himself and his family to defend themselves against the forces of evil that would come at the end of the world. While he lawfully owned weapons, his ownership of the automatic weapons was illegal because he did not register them with the national firearms registry. The third weapon with which he is held accountable, was leally purchase, as was the shortened barrel, which he purchased online. It was the combination of the weapon and the shortened barrel which made the crime.

(2) *The need for the sentence imposed–*

*(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*;

David Brian Stone immediately admitted his guilt of this offense as soon as the other charges were dismissed.

*(B) to afford adequate deterrence to criminal conduct*;

Mr. Stone's conviction alone will prevent him from owning firearms in the future. As a deterrent to others, Mr. Stone's two year jail term while waiting to be cleared of the other crimes will clearly deter those who wish to be deterred.

*(C) to protect the public from further crimes of the defendant*;

The public does not believe it needs protection from David Brian Stone. David Brian Stone also has the support and respect of the community. While this case was at issue, members of the community were prepared to appear as both fact and character witnesses for him. All of those individuals are preparing letters to the Court. Those will be submitted through the probation department under a separate cover.

To the extent that there is a doubt about the possibility of Mr. Stone engaging in future criminal conduct, research by the Sentencing Commission demonstrates that there is little likelihood that Mr. Stone will repeat In May 2004, the Sentencing Commission issued its study, "Measuring Recidivism.", http://www.ussc.gov/publicat/Recidivism_General.pdf ("Measuring Recidivism"). This report offered a statistical analysis of the type of person most likely and least likely to re-offend. The study demonstrated that the risk of Mr. Stone re-offending is nil, and also lends support to the defense position that it is important in this case not to impose a custodial sentence.

The study demonstrated that 1) those over 50 are less likely to recidivate than those under 50; 2) those who have not used illicit drugs, are less likely to recidivate than those who did; 3) those who are or have been married are less likely to recidivate than those who have never been married; 4) non-violent offenders are less likely to recidivate than violent offenders; 5) first time offenders are less likely to recidivate than repeat offenders; 6) those who are employed are less likely to recidivate than those who aren't; and 7) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive jail.  All of these factors support a non custodial sentence for Mr. Stone.

The Sentencing Commission has recognized that (1) recidivism rates decline dramatically with age, and (2) first-time offenders are even less likely to reoffend than defendants with a limited criminal history who also fall within Criminal History Category I. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, (May 2004) [hereinafter Measuring Recidivism Report]; U.S. Sentencing Commission, *Recidivism and the "First Offender,"* at 13- 14 (May 2004) http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf.

This study demonstrates that it is very likely Mr. Stone will not re-offend.  Each of the factors studied, as applied to Mr. Stone, support this position.

*(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatmentin the most effective manner*;

Mr. Stone would gratefully accept whatever assistance this Court could provide him in finding employment and/or new job skills.

(3)  *The kinds of sentences available*;

There is nothing to limit this Court's creativity in sentencing Mr. Stone.   In the

Sentencing Reform Act, Congress directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence *other than imprisonment* in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j) (emphasis added). This Court should consider a sentence other than imprisonment in light of Mr. Stone's first offender, non violent conduct.

(4) *The advisory Guideline range*;

The guideline ranges should be given minimal weight in this Court's § 3553(a) analysis. *See, United States v. Aldelson*, 4441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998))

(5) *Any pertinent policy statements issued by the Sentencing Commission*;

There is nothing applicable here.

(6) *The need to avoid unwarranted sentence disparities*;

There is nothing applicable here

(7) *The need to provide restitution to any victims of the offense*.

There is nothing applicable here

**Conditions of Confinement as a Basis For a Lower Sentence**

David Brian Stone respectfully requests that this Honorable Court consider the conditions of his pretrial confinement when imposing sentence. He is requesting the consideration due to the unusually isolating and harsh terms of his pretrial confinement.

Mr. Stone, who had never been confined in any jail prior to this case, suffered through extreme conditions of detention for 24 months, awaiting trial for charges that were false. Because of the nature of those charges, he was kept in maximum security confinement his entire

time of detention, both while in the Wayne County Jail, and while at FDC Milan. He was allowed no contact with any of the other defendants in this case. Although his telephone time was not restricted, because all of his family members were codefendants in the case, even those on bond could not visit him. He was, for all intents and purposes, isolated.

Because of the terms of his detention, he was initially prevented from having any contact with his wife. Even after this Court entered an order allowing his wife to write and have telephone contact with him, he was prohibited from having any visits from her. He was allowed no contact with his sons, and was unable to see his grandchildren; one was born while he was in custody.

Although he was allowed to see his wife during the trial, because of the nature of the charges, the Marshals would not allow them to be seated at the same table. His wife could not hand him pictures of their grandchildren, or talk to him during the trial. The Marshals would allow them to say hello and goodbye, but for the most part, no other contact was allowed.

Mr. Stone also suffered without regular, adequate medical care during his incarceration. Mr. Stone suffers from back problems as a result of a childhood injury. A lifetime of manual labor has exacerbated that problem. No meaningful medical care was available to him while he was in custody. As the Court will recall, it took a court order to get him medical attention during the trial.

Numerous courts have adjusted sentences based upon conditions of confinement. See, *United States v. Pressley*, 345 F.3d 1205, 1219 (11th Cir. 2003) *United States v. Torres*, Case No. 01-CR-1 078 (S.D.N.Y. Aug 30, 2005); *United States v. Otalvaro-Otero*, S2-04-CR-00345 (SDNY). See also *United States v. Rodolfo Mosquera-Masmela*, (SDNY).

**Conclusion**

David Brian Stone was, and continues to be falsely and unfairly demonized by the United States Government in the charges and public statements made against him[1]. David Brian Stone was knowingly, and falsely accused of crimes which the evidence showed he clearly did not commit. David Brian Stone was incarcerated under conditions that were unwarranted because of the false accusations that were laid against him. As a result of this injustice, Mr. Stone was separated from his family for two years. The injustice continues to this day, as Mr. Stone cannot find work, because, although his employer is willing to re-employ him, his former employer's major contractor stated it would terminate its business relationship with the employer if it rehired him.

This Court's judgment in this case ought to recognize that there is a difference between a person who commits crimes as part of a criminal lifestyle, and a person who has a lifestyle that technical provisions of the law make criminal. This Court ought to recognize the primacy of the parsimony provision of 18 USC 3553(a), and impose a sentence not greater than necessary – a sentence of supervision, not incarceration.

There are three reasons that to suggest that Mr. Stone does not require incarceration. One, he's smart enough to know that the government could make his life a living hell if he violates the law again. He does not want to go through this again. He knows he has a target on his back and does not want to give the government the opportunity to aim at him. He has already

---

[1] It should be remembered that notwithstanding this Court's findings in its Order Granting Defendants' Motions for Judgment of Acquittal [DE 767], and the unequivocal evidence presented before the jury in this case which stated there was never any plan or target, after the dismissal of the principle charges in this case, the United States Attorney herself continued to assert there was an imminent plan of attack, referenced Mr. Stone in the same sentence as Timothy McVeigh, and suggested there was some similarity between them, see e.g. http://www.govloop.com/profiles/blogs/u-s-attorney-vows-to-go-after-terrorists-despite-defeat-in

lost everything he had; while he was incarcerated, his modest home was invaded and ransacked. What was not stolen, was destroyed.  The home was made unliveable.  Because of his inability to find work, and the loss of his home, he is a beggar, living on the charity of his inlaws.

Reason number two, he is not a young man.  He's now 47 years old.  Life is hard enough, and he does not wish it to become any harder.

Finally, with age comes frailty, and Mr. Stone is beginning to experience that.  Because of his lack of education and marketable skills, he has worked at manual labor his whole life.  That has taken its toll on him.

Because it is the certainty, not the severity, of punishment that best serves as a general deterrent to the public at large, a sentence of supervision would more than adequately fulfill § 3553(a)'s command  to impose a sentence that is sufficient but not greater than necessary to accomplish the purposes of sentencing.

        Respectfully submitted,

         /s *William W. Swor*
        WILLIAM W. SWOR   (P21215)
        Attorney for David Brian Stone
        3060 Penobscot Building
        645 Griswold
        Detroit, Michigan 48226
        (313) 967-0200
        wwswor@wwnet.net

Dated: July 18, 2012